**THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| **BETHUNE-COOKMAN** | ) | |
| **UNIVERSITY, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No.** |
| | ) | |
| **DR. MARY MCLEOD BETHUNE** | ) | **JURY TRIAL DEMANDED** |
| **NATIONAL ALUMNI** | ) | |
| **ASSOCIATION, INC., and** | ) | |
| **JOHNNY L. MCCRAY, JR., individually** | ) | |
| | | |
| **Defendants.** | | |

## VERIFIED COMPLAINT

Plaintiff, BETHUNE-COOKMAN UNIVERSITY, INC. (the "University" or "Plaintiff"), sues DR. MARY MCLEOD BETHUNE NATIONAL ALUMNI ASSOCIATION, INC. ("Former Alumni Association") and JOHNNY L. MCCRAY, JR. ("MCCRAY"), individually, (collectively "Defendants"), and as grounds for its Complaint, states as follows:

## INTRODUCTION

1.     The University's Founder, Dr. Mary McLeod Bethune, started a school for girls in 1904, which became Bethune-Cookman College, Inc. and thereafter, Bethune-Cookman University, Inc.

1

2.      The Former Alumni Association is a Florida corporation comprised of some of the University's alumni, who raise funds in the University's name and for its benefit. Until recently, the University allowed the Former Alumni Association to use its name and trademarks in its fundraising efforts.

3.      At all relevant times, Defendant, MCCRAY, was and is the President of the Former Alumni Association.

4.      On September 1, 2021, the University's Board of Trustees voted to disassociate from the Former Alumni Association and to establish the University's own Alumni Direct Support Organization[1] for the University to fundraise and support alumni affairs. The University's Board of Trustees made this decision in light of the Southern Association of Colleges and Schools - Commission on Colleges ("SACS") accreditation standards and requirements, and the need to have control and oversight over its fundraising activities.

5.      The Former Alumni Association has not filed its IRS Form 990 information returns since 2016, therefore, losing its tax-exempt status with the IRS.

6.       Further, the Former Alumni Association's leadership, including MCCRAY, has made publicly disparaging remarks about the University and its Board of Trustees. *See i.e.*, Article authored by the Former Alumni Association's

---

[1] Direct Support Organizations are widely and successfully used across the nation by universities to establish a direct connection between the University and its alumni using more organized, structured, and effective alumni-driven programming and fundraising.

2

President, Johnny L. McCray, Jr., attached hereto as "**Exhibit A**."

7.      With this disassociation, the Former Alumni Association is no longer permitted to use the University's name, likeness, logos, or trademarks, or represent itself publicly as associated with the University.

8.      Despite several demands by the University to the Former Alumni Association to stop using the University's name, likeness, logos, or trademarks or representing itself publicly as associated with the University, the Former Alumni Association, at the authorization and direction of MCCRAY, still uses the University's name, likeness, logos, and trademarks, and falsely represents that it is associated with the University.

9.      Due to the Former Alumni Association's failure to comply with the University's repeated demands, the University seeks relief from this Court from the Former Alumni Association's continued false association with the University and use of the University's trademarks and tradenames.

## PARTIES

10.      The University is a Florida not for profit corporation, with its principal place of business in Volusia County, Florida.

11.      The Former Alumni Association is a Florida not for profit corporation, with its principal place of business in Volusia County, Florida.

12.      At all relevant times, Defendant, MCCRAY, was and is the President of the Former Alumni Association, and is a resident of Broward County, Florida.

## JURISDICTION AND VENUE

13.    The Court has jurisdiction over the Former Alumni Association because it is a Florida corporation doing business in the State and has substantial, continuous and systematic contacts with the State of Florida.  As a result, it is fair and reasonable to require it to defend this action in Florida.

14.    Defendant, MCCRAY, resides in the State of Florida.

15.    The Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1338(a), because the Former Alumni Association is in violation of the Lanham Act (15 U.S.C. § 1051, *et seq*.).  Further, the Court has subject matter jurisdiction over all claims arising under state law pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

16.    Venue is proper in this Court, as the University's and the Former Alumni Association's respective principal places of business are located in Volusia County, in the Middle District of Florida, and the substantial part of the events or omissions giving rise to this claim occurred in Volusia County, in the Middle District of Florida.

## FACTUAL ALLEGATIONS

## THE UNIVERSITY'S HISTORY AND TRADEMARKS

17.    On October 3, 1904, an exceptional young Black woman, Mary McLeod Bethune, opened the Daytona Literary and Industrial Training School

4

for Negro Girls—what would become Bethune-Cookman University—with $1.50, faith in God and six students, five little girls, and Dr. Bethune's son, Albert Bethune[2].

18.    In 1923, the school merged with the Cookman Institute of Jacksonville, Florida, which had been founded in 1872. The Cookman Institute was the first institution of higher education of Blacks in the State of Florida.  The merger of the two schools was finalized in 1925. The merged institution was called the Daytona-Cookman Collegiate Institute[3].

19.    In 1931, the College became accredited by the Association of Colleges and Secondary Schools of the Southern States, as a junior college and on April 27 of that year, the school's name was officially changed to Bethune-Cookman College to reflect the leadership of Dr. Mary McLeod Bethune[4].

20.    In 2007, Bethune-Cookman College achieved university status, having added a graduate program in transformational leadership to its offerings[5].

21.    On May 11, 2004, the University applied for the trademark "BETHUNE-COOKMAN" which was registered with the United States Patent & Trademark Office ("USPTO") on November 1, 2005, Registration Number

---

[2] https://www.cookman.edu/history/index.html
[3] https://www.cookman.edu/history/index.html
[4] https://www.cookman.edu/history/index.html
[5] https://www.cookman.edu/history/index.html

3010916, and is used for, *inter alia*, printed instructional, educational, and teaching materials in the fields of art, humanities, business, education, nursing, science, engineering, mathematics, and social sciences, stationery, folders, writing instruments, binders, calendars, posters, letter openers, shirts, pants, headwear, footwear, shorts, sleepwear, baby bibs not of paper, undergarments, and ties.

22.    The University's first use in commerce of the "BETHUNE-COOKMAN" trademark was at least as early as 1926.  A true and correct copy of Registration No. 3010916 is attached hereto as "**Exhibit B**."

23.    The University also owns the service mark "BETHUNE-COOKMAN" under Registration Number 2997255, for education and entertainment services, namely, providing courses of instruction at the university level, arranging and conducting athletic sporting events, and live performances by a musical band, a choral group or an orchestral performing group. The service mark was first used in commerce as early as 1926. A true and correct copy of Registration No. 2997255 is attached hereto as "**Exhibit C**."

24.    The University's "BETHUNE-COOKMAN" trademark and service mark is similarly registered in Florida. A true and correct copy of Florida Registration Number T06000001446 is attached hereto as "**Exhibit D**."

25.    The University owns[6] the service mark "FLORIDA CLASSIC",

---

[6] This mark is jointly owned by the University and the Florida Agricultural and

under Registration Number 3031481, for entertainment services, namely, football games, golf tournaments, galas, marching band events, dance events, fashion shows, festivals, and live performances by a musical band, a choral group, or an orchestral performance, and for serving food and beverages at luncheons.  The mark was first used in commerce at least as early as 1978.  A true and correct copy of Registration No. 3031481 is attached hereto as "**Exhibit E**."

26.    The University's "FLORIDA CLASSIC" service mark is similarly registered in Florida. A true and correct copy of Florida Registration Number T06000001498 is attached hereto as "**Exhibit F**."

27.    The University also owns the trademark and service mark under Registration Number 1974478, consisting of the University's seal described as "two parallel circles encircling an inverted trisected isosceles triangle in which the words 'HEAD', 'HAND', and 'HEART' are arranged clock-wise within each section; the dates '1923', '1872' and '1904' are arranged in a clockwise fashion between the isosceles triangle and the inner circle; reading left to right across the top from the 7:00 position to the 5:00 position of the boarder of the circle is '*BETHUNE-COOKMAN UNIVERSITY*'; printed along the bottom border of the circle is the year '2007'" for non-metal key-chains and for education [and entertainment] services; namely, providing courses of instruction at the college

---

Mechanical University Board of Trustees ("FAMU").

level:



28.     This mark was first used in commerce at least as early as 1923. A true and correct copy of Registration No. 1974478 is attached hereto as "**Exhibit G**."

29.     This mark was also registered in Florida. A true and correct copy of Florida Registration Number T11000000242 is attached hereto as "**Exhibit H**."

30.     The University owns the service mark under Registration Number 4406777, which consists of an angle view of a wildcat's head, for education services in the nature of courses at the university level, entertainment in the nature of beauty pageants, entertainment services in the nature of dance, musical, theater, pep rally, parades, performing arts, comedy and step performances, fashion modeling for entertainment purposes, organizing and conducting college sport competitions and athletic events:



31.     The mark was first used in commerce at least as early as August 1996. A true and correct copy of Registration No. 4406777 is attached hereto as "**Exhibit I**."

32.     The aforementioned trademarks and service marks are valid and subsisting in law, were duly and legally issued, and constitute constructive notice of the University's ownership of the marks in accordance with Sections 7(b) and 22 of the Federal Lanham Act, 15 U.S.C. §§ 1115(a), 1057(b), and 1072.

33.     Further, the USPTO has issued a Notice of Acceptance under Section 8 of the Lanham Act,  15 U.S.C. §1058(a)(l) and Section 15 of the Lanham Act, 15 U.S.C. §1065  for the aforementioned trademarks and service marks. Accordingly, the University's rights to these registrations are "incontestable" under Section 15 of the Lanham Act, 15 U.S.C. §1065.

34.     As of the date of this filing, the University also has USPTO trademark applications pending for the mark "BC" (stylized and/or with design), the literal element of which consists of "BC" styled as interlocking block letters, for goods in

9

Classes 20, 21, 16, 25, 14, and 24 specifically, for chairs and portable folding stadium seats, beverageware, decals, folders bearing stationery, pens, spiral-bound notebooks, and three-ring binders, gloves, hats, scarves, shirts, shorts, sweatshirts, jackets, and ties as clothing, keychains:



See USPTO application serial numbers: 90863047; 90863045; 90863053; 90863032; 90862998; 90863036, attached hereto as composite "**Exhibit J**."

35.     The University first used this mark in commerce at least as early as February 24, 2021.

36.     The aforementioned registered (or applied for) trademarks and service marks will be collectively referred to herein as the ("University's Marks").

37.     The University's Marks have been used to identify the University's services and to distinguish them from the services of other educational institutions and organizations. For example, the University prominently displays and uses these marks on school buildings, letterhead, correspondence, direct mailings, its website, and school and Alumni newsletters, among other things.

38.    The University is a tax-exempt institution and accepts contributions from numerous donors each year. The University's Alumni represent a significant segment of the University's donor base. The University regularly employs the University's Marks in its efforts to raise money to further the University's mission.

## THE FORMER ALUMNI ASSOCIATION'S HISTORY AND MISSION

39.    The Former Alumni Association is an independent corporation, which is not legally affiliated with the University through common ownership or otherwise.

40.    However, from the beginning, cooperation between the University and the Former Alumni Association was integral to the Former Alumni Association's founding and mission.

41.    Indeed, according to its April 28, 2020 Bylaws, the Former Alumni Association's purpose is to maintain intimate and continuous involvement with the University when conducting its fundraising activities and other support on behalf of the University:

> "The general purpose of this corporation shall be to perpetuate the history, ideals and philosophy of Bethune Cookman University and to promote the University as an institution of academic excellence and to create and maintain an environment that encourages alumni participation through volunteerism and financial support for the Association and University. In addition, the Association shall maintain, foster and expand the unique and special relationship between the University and its alumni."

42.    A true and correct copy of the Former Alumni Associations' April 28,

11

2020 Bylaws are attached hereto as "**Exhibit K**".

43.     The Former Alumni Association's Chapters' Assessments are to include donations to the University:

> "a.     Each chapter shall pay an assessment as approved by the Board of Directors each year to include scholarship, donation to the University and operational expenses of the Association."

*See* Former Alumni Association Bylaws at Article I, Section 5.

44.     Further, the Former Alumni Association's website[7] states that its Mission is to serve the University:

## *Our Mission*

> The National Alumni Association is a comprehensive alumni association dedicated to serving alumni and Bethune-Cookman University. The mission of the National Alumni Association is to promote, support, and advance the mission, vision, and core values of Bethune-Cookman University by fostering and enhancing the relationship between the University and its alumni, members, students, friends, and supporters.

45.     Its Vision is to advance the mission of the University:

## *Our Vision*

> The NAA will be recognized for its outstanding service to alumni and members, and for advancing the mission of Bethune-Cookman University. Through the National Alumni Association, alumni, members, friends and supporters will have a lifelong relationship with the University.

---

[7] https://www.mmbnaa.org/about-us-1 (as of January 6, 2022).

## ACCREDITATION IMPLICATIONS

46.     The University has achieved accreditation with the Southern Association of Colleges and Schools Commission on Colleges ("SACS").  SACS is the body for the accreditation of degree-granting higher education institutions in the Southern states.

47.     To gain or maintain accreditation with SACS, an institution must comply with the standards contained in the *Principles of Accreditation: Foundations for Quality Enhancement* and with the policies and procedures of the Commission.

48.     In recent years, the SACS accreditation standards have been revised to include more stringent standards pertaining to fundraising by "institution-related entities," which are entities organized separate from the University, but whose purpose is to raise funds to support the University and its programs.

49.     Specifically, Section 5.3 of the SACS Accreditation Standards requires the University to exercise sufficient direction and control over the fundraising activities of institution-related entities.

50.     The University will go through the SACS reaffirmation process in 2022.

51.     Failure to comply with the SACS accreditation standards could result in loss of accreditation, which would be devastating to the University. Losing

accreditation would cause the University and its students to lose access to federal student loans and grants through Title IV, Historically Black College and University (HBCU) funding through Title III, and grants, scholarships, and annual distributions through the United Negro College Fund (UNCF).

52. Loss of accreditation would also of course, negatively impact the University's academic standing, the transferability of academic credits to other accredited institutions, and the value of degrees awarded by the University.

53. In order to comply with SACS standards and exercise direction and control over institution-related entities' fundraising for the University, the University can create a Direct Support Organization for its alumni and other donors to contribute directly to the University.

54. Many Southern colleges and universities with SACS accreditation use Direct Support Organizations for this purpose, including, but not limited to the University of Florida and Florida State University.

**FORMER ALUMNI ASSOCIATION'S LOSS OF TAX-EXEMPT STATUS**

55. In addition to the issue of the University's direction and control over institution-related entities' fundraising for the University, the University has also learned that the Former Alumni Association has lost its tax-exempt status with the IRS. According to public records, the Former Alumni Association has not filed its IRS Form 990 information returns since 2016—therefore, losing its tax-exempt

status due to its failure to file three (3) years of IRS Form 990 information returns.

## DISPARAGEMENT BY THE FORMER ALUMNI ASSOCIATION

56.    The Former Alumni Association's leadership has a history of publicly disparaging the University and its Board of Trustees.  *See i.e.* Exhibit A, authored by the Former Alumni Association's President, MCCRAY.

## DISASSOCIATION FROM FORMER ALUMNI ASSOCIATION AND REVOCATION OF PERMISSION TO USE MARKS

57.    The University's Board of Trustees (the "Board") convened on September 1, 2021, and unanimously voted for the University to break ties with and disassociate from the Former Alumni Association, and to create a Direct Support Organization. A true and correct copy of the Board's Resolution is attached hereto as "**Exhibit L**".

58.    Under the Direct Support Organization model, alumni will work directly with the Bethune-Cookman University Office of Alumni Affairs, which allows the University to exercise sufficient direction and control over the fundraising activities for the University, as required by SACS accreditation standards, and for more direct, efficient, and effective alumni engagement.

59.    On or about September 17, 2021, the University's counsel sent a letter to the Former Alumni Association's counsel advising that in light of the resolution passed by the Board, the Former Alumni Association was not legally authorized to use the University's name, likeness, logos, or facilities, or to represent itself

publicly as being associated with the University in any way. A true and correct copy of the September 17, 2021 Letter is attached hereto as "**Exhibit M**."

60.    The Former Alumni Association was previously known as the "National Alumni Association of Bethune-Cookman University, Inc."

61.    After receipt of cease and desist letter(s) from the University, the Former Alumni Association, at the direction and authorization of MCCRAY, changed its name to Dr. Mary McLeod Bethune National Alumni Association, Inc., to remove "Bethune-Cookman University" from its name while continuing to keep the University's Founder's name.

62.    Dr. Mary McLeod Bethune is of course, inextricably associated with the University.  Dr. Bethune is the University's Founder, the University is named after her, and in addition to her statue, her home is located on the University's campus.  Further, a replica of her National Statuary Hall statue will be placed in the Riverfront Park in Daytona Beach, Florida, in such a way that it is directly facing the University, because of Dr. Bethune's inextricable ties to the University.

63.    In addition to using the University's Founder's name, the Former Alumni Association, at the direction and authorization of MCCRAY, continued to use the University's likeness, logos, and trademarks, and represent itself publicly as being associated with the University.

64.    The University's counsel sent a second cease and desist letter to the

Former Alumni Association's counsel on or about September 29, 2021, again demanding that the Former Alumni Association cease and desist using the University's name, likeness, logos, and trademarks, and representing itself publicly as associated with the University, including using the University's Founder's name, which is inextricably associated with the University—all creating the false impression that the Former Alumni Association is associated with the University. A true and correct copy of the September 29, 2021 Letter is attached hereto as "**Exhibit N**".

65.    In response, the Former Alumni Association's counsel responded advising that the Former Alumni Association would comply by the end of October 2021. A true and correct copy of the October 5, 2021 Letter received is attached hereto as "**Exhibit O**".

66.    The University responded advising the Former Alumni Association that it already had ample time to disassociate, and that the continued use of the University's name, likeness, and logos, including, *inter alia* on the Former Alumni Association's website, in its email address(es), domain name(s), and flyers circulated, would cause confusion among alumni/donors, in violation of federal and state trademark law. Further, the use of the name of the University's Founder in the Former Alumni Association's new name, would further cause confusion and false association with the University. A true and correct copy of the October 12, 2021

Letter is attached hereto as "**Exhibit P**."

## THE FORMER ALUMNI ASSOCIATION'S CONTINUED INFRINGEMENT AND FALSE ASSOCIATION

67.     The Former Alumni Association is not authorized or licensed by the University to seek contributions from Alumni or the public on the University's behalf, or to use or exploit the University's Marks.

68.     Despite the University's clear notice of disassociation and multiple notices of infringement and demands to cease and desist, the Former Alumni Association, at the authorization and direction of MCCRAY, has continued to represent that it is authorized to contact the University's alumni and solicit donations for the University, and otherwise, willfully infringe upon and dilute the University's Marks by using them without permission. See several flyers, website pages, email correspondence, social media postings, etc. displayed or disseminated by the Former Alumni Association bearing the University's Marks and/or falsely representing service of and association with the University, attached hereto as composite "**Exhibit Q**."

69.     See also the Former Alumni Association's current logo, which contains the University's colors, an image of the University's marching band, images of the University's campus buildings and statues, and an image of the University's Founder and her home on campus:



Dr. Mary McLeod Bethune
National Alumni Association

70.     The Former Alumni Association, at the direction and authorization of MCCRAY, continues to use "Dr. Mary McLeod Bethune," the University's Founder, in its name, including having registered this new name with the Florida Division of Corporations.

71.     This unauthorized commercial use of the University's Marks and false association with the University is designed to willfully and/or intentionally trade on the goodwill of the University's Marks and cause confusion and deception in the marketplace among customers intending to purchase goods and services affiliated with or otherwise authorized by the University, and among donors who intend to provide funds for the benefit of the University. *See Cyclonaire Corp. v. United States Systems, Inc.,* 209 U.S.P.Q. 310, 314 (D.Kan. 1980) ("A party with a prior relationship with the first mark has a greater duty to adopt a clearly distinguishable mark than does a mere stranger."); *see also Sicilia Di R. Biebow & Co. v. Ronald Cox,* 732 F.2d 417, at 432 (5th Cir.1984) ("We think that Cox's prior role as a distributor of Sicilia's citrus juice provides additional evidence of his intent to trade on the goodwill of Sicilia").

72.     The Former Alumni Association's intentional unauthorized commercial use of the University's Marks has deceived and is likely to deceive donors and the relevant consuming public into believing, mistakenly, that the Former Alumni Association's services originate from, are associated or affiliated with, or are otherwise authorized by the University, which they are not.

73.     Defendants' actions are causing, and unless restrained, will continue to cause, damage and immediate irreparable harm to the University that cannot be adequately compensated with money damages.

**COUNT I**
**TRADEMARK INFRINGEMENT- 15 U.S.C. § 1114**
**(Former Alumni Association and MCCRAY)**

74.     The University incorporates by reference the allegations in paragraphs 1 through 73, as though fully set forth herein.

75.     The Former Alumni Association's use of "Bethune-Cookman," "Bethune-Cookman University," "B-CU", "B-CU Alumni Association", and "Dr. Mary McLeod Bethune National Alumni Association," which are substantially similar in their entireties as to appearance, sound, connotation and commercial impression to the University's Marks constitutes infringement. *See i.e.* composite Exhibit Q, depicting examples of this infringement by the Former Alumni Association.

76.     The Former Alumni Association's use of "Bethune-Cookman,"

20

"Bethune-Cookman University," "B-CU", "B-CU Alumni Association," and "Dr. Mary McLeod Bethune National Alumni Association" is in connection with the same kinds of goods and/or services as those produced, marketed and sold by the University.

77.    The Former Alumni Association's similar use of the University's Marks, including the University's seal, FLORIDA CLASSIC, the wildcat's head, and "BC"[8] constitutes unlawful infringement. *See i.e.* composite Exhibit Q at Q-1, Q-3, Q-4, Q-5, Q-6, Q-13, Q-15, Q-16, Q-17, Q-18, Q-19, and Q-20.

78.    The purchasing public and donors are likely to be confused, and such use of the University's Marks is likely to cause mistake or to deceive the public as to the source or origin of the respective goods and services, causing irreparable harm to the University for which there is no adequate remedy at law, including:

a.    loss of the ability to control the use of the University's Marks in commerce, including the quality of goods and services (including fundraising) that the marks are being used in association with;

b.    loss of opportunities or interference with the University's relationship with its Alumni, students, donors, vendors and other members of the

---

[8] See USPTO application serial numbers: 90863047; 90863045; 90863053; 90863032; 90862998; 90863036.  The University has included this mark in this infringement claim in anticipation of the applications for registration of this mark being approved.

public with which it does business;

     c.    confusion among the consuming public (including fundraisers and donors) as to the University's affiliation with, approval of and/or sponsorship of the Former Alumni Association and the Former Alumni Association's goods and services/ events; and

     d.    actual and/or imminently threatened loss to the University's valuable goodwill and reputation with the consuming public.

79.    The University has a clearly ascertainable right as to its trademarks, tradename, and trade dress, which is in need of protection, and it is likely to succeed on the merits of this action.

80.    The Former Alumni Association's activities and infringement, at the direction and authorization of MCCRAY, have caused and will cause irreparable harm to the University for which the University has no adequate remedy at law. Accordingly, the University is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a), including preliminary injunctive relief under Fed. R. Civ. P. Rule 65.

81.    The granting of an injunction under these circumstances is not contrary to public interest.

82.    The Former Alumni Association's infringement, at the direction and authorization of MCCRAY, has been committed with knowledge that such

imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

83.     As a result of this infringement, the University has suffered and will continue to suffer substantial financial harm, including, but not limited to loss of fundraising and sponsors.

84.     The University has engaged the undersigned attorneys and is required to pay them a reasonable fee for their services.  The University is entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

**WHEREFORE**, the University requests judgment against Defendants as follows:

1.     The Court enter an order and judgment temporarily and permanently enjoining the Former Alumni Association and its agents, officers, representatives, employees, and attorneys from:

(a)     using the University's marks described in this count or any colorable imitations thereof, including those that are confusingly similar to or in any way similar to the University's marks or that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of the Former Alumni Association's goods and services, or cause the impression that the Former Alumni Association's goods and services are associated with

23

the University;

(b)    registering, trafficking in or using any state or federal trademark or service mark that incorporates the University's marks or any colorable imitations thereof;

(c)    displaying goods or services incorporating the University's marks in connection with any advertisement or promotion including, without limitation, over the internet;

(d)    displaying, offering for sale and selling goods or services incorporating the University's marks;

(e)    otherwise using any trademarks, trade dress, or tradenames that are confusingly similar to any of the University's Marks, including, but not limited to "Bethune-Cookman," "Bethune-Cookman University," "B-CU," "B-CU Alumni Association," and any variation of the name of the University's Founder, "Mary McLeod Bethune," whether alone or in combination with other text, words, letters numbers, the University's colors, images of the University's campus and events, or images of its Founder;

(f)    all fundraising and solicitation efforts in the name of or on behalf of the University in any manner;

2.    The Court enter an order and judgment:

(a)     pursuant to 15 U.S.C. § 1118, requiring Defendants to deliver up for destruction all materials bearing the University's Marks, trade dress, or tradenames, in its possession, custody or control;

(b)     requiring Defendants to publicly display corrective advertising for informing consumers and donors of its unauthorized use of the University's marks and lack of affiliation with, or sponsorship or endorsement by, the University;

(c)     declaring this to be an exceptional case and awarding the University its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

(d)     granting the University any other remedy to which it may be entitled as provided in 15 U.S.C. §§ 1116 and 1117, including, but not limited to damages and Defendants' profits; and

(e)     for such other and further relief to which the University shows it is justly entitled at law or in equity.

## COUNT II
## FALSE DESIGNATION OF ORIGIN-15 U.S.C. § 1125(a)
**(Former Alumni Association and MCCRAY)**

85.     The University incorporates by reference the allegations in paragraphs 1 through 73, as though fully set forth herein.

86.     At the direction and authorization of MCCRAY, the Former

Alumni Association's use of the University's Marks in connection with its goods and services represents a false designation of origin in violation of 15 U.S.C. § 1125(a). *See* composite Exhibit Q.

87.   In violation of 15 U.S.C. § 1125(a), Defendants make false or misleading descriptions and representations of fact indicating that the Former Alumni Association is associated with the University, including, but not limited to the Former Alumni Association's characterization of its services as "…dedicated to serving…Bethune-Cookman University" and describing its mission as "to promote, support, and advance the mission, vision, and core values of Bethune-Cookman University by fostering and enhancing the relationship between the University and its alumni, members, students, friends, and supporters," [9] as well as declaring that it "provides financial support to the University" and that through its website, one can "donate with NAA BCU." *See* composite Exhibit Q, at Q-1, Q-14.

88.   In violation of 15 U.S.C. § 1125(a), the Former Alumni Association, at the direction and authorization of MCCRAY, makes false or misleading descriptions and representations of fact indicating that it is associated with the University by, *inter alia*, using pictures of the University's buildings, statues, the home of its Founder, and its marching band on its website

---

[9] https://www.mmbnaa.org/about-us-1 (as of January 6, 2022).

and in other publications. *See* composite Exhibit Q.

89.     As a result of the Defendants' violation of 15 U.S.C. § 1125(a), the University has suffered damages, and is entitled to award of those damages and costs under 15 U.S.C. § 1117.

90.     The Former Alumni Association's activities and infringement, at the direction and authorization of MCCRAY, have caused and will cause irreparable harm to the University for which the University has no adequate remedy at law. Accordingly, the University is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a), including preliminary injunctive relief under Fed. R. Civ. P. Rule 65.

91.     The University has a clearly ascertainable right as to its trademarks, tradename, and trade dress, which is in need of protection, and it is likely to succeed on the merits of this action.

92.     The granting of an injunction under these circumstances is not contrary to public interest.

93.     The University has engaged the undersigned attorneys and is required to pay them a reasonable fee for their services. The University is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

**WHEREFORE**, the University requests judgment against Defendants as

follows:

1.    The Court enter an order and judgment temporarily and permanently enjoining the Former Alumni Association and its agents, officers, representatives, employees, and attorneys from:

(a)    using the University's Marks or any colorable imitations thereof, including those that are confusingly similar to or in any way similar to the University's Marks or that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of the Former Alumni Association's goods and services or cause the impression that the Former Alumni Association's goods and services are associated with the University;

(b)    registering, trafficking in or using any state or federal trademark or service mark that incorporates the University's Marks or any colorable imitations thereof;

(c)    displaying goods or services incorporating the University's Marks in connection with any advertisement or promotion including, without limitation, over the Internet;

(d)    displaying, offering for sale and selling goods or services incorporating the University's Marks;

(e)    otherwise using any trademarks, trade dress, or tradenames that are confusingly similar to any of the University's Marks, including,

28

but not limited to "Bethune-Cookman," "Bethune-Cookman University," "B-CU," "B-CU Alumni Association," and any variation of the name of the University's Founder, "Mary McLeod Bethune," whether alone or in combination with other text, words, letters numbers, the University's colors, images of the University's campus and events, or images of its Founder;

(f)　all fundraising and solicitation efforts in the name of or on behalf of the University in any manner;

(g)　making any statement or taking any action that suggests the Former Alumni Association or its activities are affiliated with, approved by, sponsored by, or in any way authorized by the University;

(h)　planning or organizing Alumni fundraising events, including, but not limited to during the University's Homecoming Weekend;

(i)　having representatives solicit funds or membership at University events; and

(j)　engaging in activities, including fundraising or membership solicitation, for the benefit of the Former Alumni Association at all University sponsored events, including, but not limited to football games, Alumni events, awards ceremonies, and commemoration events, etc.

2.　The Court enter an order and judgment:

(a)    pursuant to 15 U.S.C. § 1118, requiring Defendants to deliver up for destruction all materials bearing the University's Marks, trade dress, or tradenames, in its possession, custody or control;

(b)    requiring the Former Alumni Association to publicly display corrective advertising for informing consumers and donors of its unauthorized use of the University's Marks and lack of affiliation with, or sponsorship or endorsement by, the University;

(c)    declaring this to be an exceptional case and awarding the University its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

(d)    granting the University any other remedy to which it may be entitled as provided in 15 U.S.C. §§ 1116 and 1117 including, but not limited to damages and Defendants' profits; and

(e)    for such other and further relief to which the University shows it is justly entitled at law or in equity.

## COUNT III
## DILUTION BY BLURRING-15 U.S.C. § 1125(c)
### (Former Alumni Association and MCCRAY)

94.    The University incorporates by reference the allegations in paragraphs 1 through 73, as though fully set forth herein.

95.    In the nearly 100 years that the University has been using the

"BETHUNE-COOKMAN" trademark and service mark, consumer (and donor) recognition of the mark has grown substantially.  The University's "BETHUNE-COOKMAN" trademark and service mark are famous as they are widely recognized by the general consuming public of the United States as a designation of source of the University's goods and services.

96.     At the direction and authorization of MCCRAY, the Former Alumni Association's willful use of the marks "Bethune-Cookman," "Bethune-Cookman University," "B-CU," "B-CU Alumni Association,"  "Dr. Mary McLeod Bethune National Alumni Association," and/or "National Alumni Association of Bethune-Cookman University" causes dilution by blurring of the University's "BETHUNE-COOKMAN" trademark and service mark because "Dr. Mary McLeod Bethune" is the University's Founder, whose name is inextricably associated with the University and its famous mark, "BETHUNE-COOKMAN".

97.     As a result of the Defendants' violation of 15 U.S.C. § 1125(a), the University has suffered damages, and is entitled to award of those damages and costs under 15 U.S. Code § 1117.

98.     At the direction and authorization of MCCRAY, the Former Alumni Association's use of similar marks causing dilution and blurring of the University's "BETHUNE-COOKMAN" trademark and service mark have caused and will cause irreparable harm to the University for which the

31

University has no adequate remedy at law. Accordingly, the University is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a), including preliminary injunctive relief under Fed. R. Civ. P. Rule 65.

99.     The University has a clearly ascertainable right as to its trademarks, tradename, and trade dress, which is in need of protection, and it is likely to succeed on the merits of this action.

100.    The granting of an injunction under these circumstances is not contrary to public interest.

101.    The University has engaged the undersigned attorneys and is required to pay them a reasonable fee for their services.  The University is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

**WHEREFORE**, the University requests judgment against Defendants as follows:

1.     The Court enter an order and judgment temporarily and permanently enjoining the Former Alumni Association and its agents, officers, representatives, employees, and attorneys from:

(a)     diluting the distinctive quality of the University's Mark(s);

(b)     otherwise using any trademarks, trade dress, or tradenames that are confusingly similar to any of the University's Marks, including,

but not limited to "Bethune-Cookman," "Bethune-Cookman University," "B-CU," "B-CU Alumni Association," and any variation of the name of the University's Founder, "Mary McLeod Bethune," whether alone or in combination with other text, words, letters numbers, the University's colors, images of the University's campus and events, or images of its Founder;

2.    The Court enter an order and judgment:

(a)    declaring this to be an exceptional case and awarding the University its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

(b)    granting the University any other remedy to which it may be entitled as provided in 15 U.S.C. §§ 1116 and 1117, including, but not limited to damages and Defendants' profits; and

(c)    for such other and further relief to which the University shows it is justly entitled at law or in equity.

## COUNT IV
## FLA. STAT. § 495.131- INFRINGEMENT
**(Former Alumni Association)**

102.    The University incorporates by reference the allegations in paragraphs 1 through 73, as though fully set forth herein.

103.    The University owns the mark "BETHUNE-COOKMAN", registered

pursuant to Chapter 495 of the Florida Statutes, Florida Registration Number T06000001446, for the following goods and services: educational and entertainment services, namely, providing courses of instruction at the university level; arranging and conducting athletic sporting events; and live performances by a musical band, a choral group, or an orchestral performing group; printed instructional, education and teaching materials in the fields of art, humanities, business, education, nursing science, engineering, mathematics, and social sciences, stationery, folders, writing instruments, binders, calendars, posters, and letter openers; shirts, pants, headwear, shorts, sleepwear, baby bibs not of paper, undergarments, and ties.

104. The mark was first used in Florida and first used anywhere at least as early as December 31, 1926, and state registration was issued on November 7, 2007, renewed on December 2, 2016, and renewed again on November 5, 2021. *See* Exhibit D.

105. The University owns the mark consisting of the University's seal, under Florida Registration Number T11000000242. The mark is used for educational services, namely providing courses of instruction at the college level.

106. The University's seal was first used in Florida and first used anywhere at least as early as August 31, 1923. State registration of the mark was issued on March 14, 2011, renewed on December 16, 2015, and renewed again on March 8,

2021. *See* Exhibit H.

107.    The University owns[10] the service mark "FLORIDA CLASSIC", under Florida Registration Number T06000001498 for entertainment services, namely, football games, marching band events, dance events, and live performances by a musical band, a choral group or an orchestral performing group, and for serving food and beverages at luncheons.  The mark was first used in commerce at least as early as 1978.

108.    State registration of the mark was issued on November 20, 2006, renewed on March 1, 2017, and renewed again on November 8, 2021. *See* Exhibit F.

109.    The University owns the mark "Florida Classic and design of a Bethune-Cookman football helmet and a FAMU football helmet facing each other against an inverted triangle, the words 'FLORIDA CLASSIC' are written above helmets" under Florida Registration Number T05000001399 for services in association with the Florida Classic Annual Event, namely, education and entertainment; miscellaneous printing and publication of books, signs, brochures, labels, decals, newspaper advertisements and other miscellaneous items:

---

[10] This mark is jointly owned by the University and the Florida Agricultural and Mechanical University Board of Trustees ("FAMU").



110.    The mark was first used in Florida and first used anywhere at least as early as November 24, 1997. State registration of the mark was issued on October 27, 2005, renewed on November 13, 2015, and renewed again on October 30, 2020. A true and correct copy of Florida Registration Number T05000001399 is attached hereto as "**Exhibit R**."

111.    The Former Alumni Association has used and continues to use the marks described in this count, or confusingly similar variations thereof (i.e. "B-CU"), for the sale, distribution, and/or advertising of goods and/or services, which is likely to cause confusion, mistake, and/or to deceive, causing irreparable harm to the University for which there is no adequate remedy at law, including:

        a.    loss of the ability to control the use of the marks in commerce, including the quality of goods and services (including fundraising) that the marks are being used in association with;

        b.    loss of opportunities or interference with the University's relationship with its Alumni, students, donors, vendors and other members of the

public with which it does business;

   c. confusion among the consuming public (including fundraisers and donors) as to the University's affiliation with, approval of and/or sponsorship of the Former Alumni Association and the Former Alumni Association's goods and services/ events;

   d. actual and/or imminently threatened loss to the University's valuable goodwill and reputation with the consuming public.

112. The Former Alumni Association's infringement, has been committed with knowledge that such marks are intended to be used to cause confusion or mistake or to deceive.

113. The Former Alumni Association's activities and infringement have caused and will cause irreparable harm to the University for which the University has no adequate remedy at law.

114. Accordingly, the University is entitled to injunctive relief pursuant to Fla. Stat. § 495.141.

115. The University has a clearly ascertainable right as to its trademarks, tradename, and trade dress, which is in need of protection, and it is likely to succeed on the merits of this action.

116. The granting of an injunction under these circumstances is not contrary to public interest.

117.    The University has engaged the undersigned attorneys and is required to pay them a reasonable fee for their services.

**WHEREFORE**, the University requests judgment against Defendants as follows:

1.    The Court enter an order and judgment temporarily and permanently enjoining the Former Alumni Association and its agents, officers, representatives, employees, and attorneys from:

(a)    using the marks described in this count or any colorable imitations thereof, including those that are confusingly similar to or in any way similar to the marks or that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of the Former Alumni Association's goods and services or cause the impression that the Former Alumni Association's goods and services are associated with the University;

(b)    registering, trafficking in or using any state registered trademark or service mark that incorporates the marks described in this count or any colorable imitations thereof;

(c)    displaying goods or services incorporating the marks in connection with any advertisement or promotion including, without limitation, over the Internet;

(d)    displaying, offering for sale and selling goods or services

incorporating the marks;

(e)   otherwise using any trademarks, trade dress, or tradenames that are confusingly similar to any of the University's Marks, including, but not limited to "Bethune-Cookman," "Bethune-Cookman University," "B-CU," "B-CU Alumni Association," and any variation of the name of the University's Founder, "Mary McLeod Bethune," whether alone or in combination with other text, words, letters numbers, the University's colors, images of the University's campus and events, or images of its Founder;

(f)   all fundraising and solicitation efforts in the name of or on behalf of the University in any manner;

2.   The Court enter an order and judgment:

(a)   requiring the Former Alumni Association to publicly display corrective advertising for informing consumers and donors of its unauthorized use of the marks and lack of affiliation with, or sponsorship or endorsement by, the University;

(b)   requiring Defendant to pay to the University all profits, including funds raised, which were derived from and/or all damages suffered by reason of the wrongful use, display, and/or sale;

(c)   awarding the University its full costs and reasonable

39

attorneys' fees pursuant to Fla. Stat. § 495.141;

(d)    granting the University any other remedy to which it may be entitled as provided in Chapter 495 of the Florida Statutes;

(e)    and for such other and further relief to which the University shows it is justly entitled at law or in equity.

**COUNT V**
**FLA. STAT. § 495.151- DILUTION**
**(Former Alumni Association)**

118.    The University incorporates by reference the allegations in paragraphs 1 through 73 and 103 through 110, as though fully set forth herein.

119.    The University owns the mark "BETHUNE-COOKMAN", registered pursuant to Chapter 495 of the Florida Statutes, Florida Registration Number T06000001446.

120.    The University owns the mark consisting of the University's seal under Florida Registration Number T11000000242.

121.    The University owns[11] the service mark "FLORIDA CLASSIC", under Florida Registration Number T06000001498, as well as the following design mark:

---

[11] This mark is jointly owned by the University and the Florida Agricultural and Mechanical University Board of Trustees ("FAMU").



122.    These marks are famous in the state of Florida, and beyond.

123.    The Former Alumni Association's use of the same or confusingly similar marks, causing dilution and blurring of the trademark and service marks described in this count have caused and will cause irreparable harm to the University for which the University has no adequate remedy at law. Accordingly, the University is entitled to injunctive relief pursuant to Fla. Stat. § 495.151.

124.    In light of the University's demands that the Former Alumni Association cease use of the same or confusingly similar marks, the Former Alumni Association's continued use is willfully intended to trade on the University's reputation and/or to cause dilution of the marks described in this count.

125.    The University has a clearly ascertainable right as to its trademarks, tradename, and trade dress, which is in need of protection, and it is likely to succeed on the merits of this action.

126.    The granting of an injunction under these circumstances is not contrary to public interest.

127.    The University has engaged the undersigned attorneys and is required to pay them a reasonable fee for their services.  The University is also entitled to recover its attorneys' fees and costs of suit pursuant to Fla. Stat. § 495.141.

**WHEREFORE**, the University requests judgment against the Former Alumni Association as follows:

1.    The Court enter an order and judgment temporarily and permanently enjoining the Former Alumni Association and its agents, officers, representatives, employees, and attorneys from:

(a)    diluting the distinctive quality of the University's marks described in this count;

(b)    using the marks described in this count or any colorable imitations thereof, including those that are confusingly similar to or in any way similar to the marks or that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of the Former Alumni Association's goods and services or cause the impression that the Former Alumni Association's goods and services are associated with the University;

(c)    otherwise using any trademarks, trade dress, or tradenames

42

that are confusingly similar to any of the University's Marks, including, but not limited to "Bethune-Cookman," "Bethune-Cookman University," "B-CU," "B-CU Alumni Association," and any variation of the name of the University's Founder, "Mary McLeod Bethune," whether alone or in combination with other text, words, letters numbers, the University's colors, images of the University's campus and events, or images of its Founder;

2.    The Court enter an order and judgment:

(a)    awarding the University its full costs and reasonable attorneys' fees pursuant to Fla. Stat. § 495.141;

(b)    awarding the University damages and profits pursuant to Fla. Stat. § 495.141; and

(c)    for such other and further relief to which the University shows it is justly entitled at law or in equity.

## COUNT VI
## FLORIDA COMMON LAW TRADEMARK INFRINGEMENT
### (Former Alumni Association and MCCRAY)

128.    The University incorporates by reference the allegations in paragraphs 1 through 73 and 103 through 110, as though fully set forth herein.

129.    In addition to use of the University's Marks, the Former Alumni Association, at the authorization and direction of MCCRAY, is using marks or

trade names "Dr. Mary McLeod Bethune National Alumni Association," "National Alumni Association of Bethune-Cookman University," and/or some variation thereof, which are confusingly similar as to appearance, sound, connotation and commercial impression to the University's marks described in this count. *See i.e* composite Exhibit Q.

130.   The Former Alumni Association uses these marks, tradenames, and/or trade dress in connection with the same and/or related kinds of goods and services as those produced, marketed, and/or sold by the University.

131.   Accordingly, such use is likely to cause mistake or to deceive the public as to the source or origin of the respective goods and services under the Former Alumni Association's marks, causing irreparable harm to the University for which there is no adequate remedy at law, and constituting infringement of the University's common law trademark rights.

132.   The University has a clearly ascertainable right as to its trademarks, tradename, and trade dress, which is in need of protection, and it is likely to succeed on the merits of this action.

133.   The granting of an injunction under these circumstances is not contrary to public interest.

   **WHEREFORE,** the University requests judgment against Defendants as follows:

1.     The Court enter an order and judgment temporarily and permanently enjoining the Former Alumni Association and its agents, officers, representatives, employees, and attorneys from:

(a)    using the marks described in this count or any colorable imitations thereof, including those that are confusingly similar to or in any way similar to the marks or that is likely to cause confusion, mistake, deception or public misunderstanding as to the origin of the Former Alumni Association's goods and services or cause the impression that the Former Alumni Association's goods and services are associated with the University;

(b)    otherwise using any trademarks, trade dress, or tradenames that are confusingly similar to any of the University's Marks, including, but not limited to "Bethune-Cookman," "Bethune-Cookman University," "B-CU," "B-CU Alumni Association," and any variation of the name of the University's Founder, "Mary McLeod Bethune," whether alone or in combination with other text, words, letters numbers, the University's colors, images of the University's campus and events, or images of its Founder;

2.     The Court enter an order and judgment:

(a)    requiring the Former Alumni Association to publicly display corrective advertising for informing consumers and donors of its

unauthorized use of the marks and lack of affiliation with, or sponsorship or endorsement by, the University;

(b)      requiring Defendants to pay to the University all profits, including funds raised, which were derived from and/or all damages suffered by reason of the wrongful use, display, and/or sale;

(c)      and for such other and further relief to which the University shows it is justly entitled at law or in equity.

## COUNT VII
## VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (Former Alumni Association)

134.    The University incorporates by reference the allegations in paragraphs 1 through 73 and 103 through 110, as though fully set forth herein.

135.    This is a cause of action for damages suffered by the University as a result of the Former Alumni Association's violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Chapter 501 of the Florida Statutes.

136.    The Former Alumni Association has engaged in unlawful trade practices through unauthorized use of the University's trademarks.

137.    The Former Alumni Association's use of the University's marks as evidenced by composite Exhibit Q, *inter alia*: falsely represents the Former Alumni Association's goods and/or services as those of the University; causes confusion or

46

misunderstanding as to the source, sponsorship, approval, or certification of the Former Alumni Association's services; causes confusion or misunderstanding as to the affiliation, connection, or association with, or certification by the University; and represents that the Former Alumni Association's services have sponsorship and approval by the University that they do not have, in violation of FDUTPA.

138.    The University has engaged the undersigned attorneys and is required to pay them a reasonable fee for their services. Pursuant to §§ 501.2105 and 501.211, Florida Statutes, the University is entitled to recover their attorneys' fees and costs from Defendant.

**WHEREFORE**, the University demands judgment in its favor and against the Former Alumni Association for damages, attorneys' fees, interest, and costs and such other and further relief as this Court deems just and proper.

**COUNT VIII**
**ACCOUNTING**
**(Former Alumni Association)**

139.    The University incorporates by reference the allegations in paragraphs 1 through 73 and 103 through 110, as though fully set forth herein.

140.    Prior to the University's disassociation from the Former Alumni Association, the implied license between the University and the Former Alumni Association allowed the Former Alumni Association to utilize the University's trademarks in order to raise money on behalf of and for the benefit of the

University.

141.    Thus, during the existence of this implied license, a fiduciary relationship existed between the University and the Former Alumni Association as the Former Alumni Association acted for the benefit of the University and the Former Alumni Association held funds in constructive trust for the benefit of the University.

142.    While using the University's trademarks, the Former Alumni Association has received funds on behalf of the University from donors who provided funds for the benefit of the University.

**WHEREFORE**, the University requests that this Court order an accounting to determine all funds that the Former Alumni Association has received for the benefit of the University, whether those funds have been delivered to the University, and that any such funds remaining with the Former Alumni Association be immediately delivered to the University.

<u>**JURY
DEMAND**</u>

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted this 7th day of January, 2022.



By:   /s/ *Scott W. Cichon*
      SCOTT W. CICHON, Lead Counsel
      FLA. BAR NO.  440876
      Primary e-mail address:
      Scott.Cichon@CobbCole.com
      Secondary e-mail address:
      Amy.Fiorenza@cobbcole.com
      Telephone: (386) 323-9282
      HOLLY W. ZITZKA
      FLA. BAR NO. 111824
      Primary e-mail address:
      Holly.Zitzka@CobbCole.com
      Secondary e-mail address:
      Lori.Dumont@CobbCole.com
      Telephone: (386) 323-9204
      Facsimile:  (386) 248-0323
      Post Office Box 2491
      Daytona Beach, FL 32115-2491
      ATTORNEYS FOR PLAINTIFF

# **VERIFICATION**

STATE OF FLORIDA
COUNTY OF VOLUSIA

     Dr. Hiram C. Powell, Ph.D., being duly sworn upon oath, deposes and says: (a) I am the **INTERIM PRESIDENT** for **BETHUNE-COOKMAN UNIVERSITY, INC.** (the "University"), Plaintiff in the above-entitled action, and on oath state that I am authorized to execute the above and foregoing verified complaint on behalf of the University; (b) that not all of the facts stated therein are within my personal knowledge; (c) the facts stated therein have been assembled by authorized employees and counsel of the University; and (d) that subject to the limitations set forth therein, I am informed the allegations are true and correct.

Sign: _____

Print: Dr. Hiram Powell

Date: 01 06 2022

_____
Notary Public

My Commission Expires: 1/14/2023

EULISSA L. BOYD
Notary Public State of Florida
Commission # GG 261940
My Comm. Expires Jan 14, 2023
Bonded through National Notary Assn.