UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Case No.:  6:22-cv-0047-WWB-RMN

BETHUNE-COOKMAN UNIVERSITY, INC.,

      Plaintiff,

v.

DR. MARY MCLEOD BETHUNE NATIONAL
ALUMNI ASSOCIATION, INC.; MARY MCLEOD
BETHUNE NATIONAL ALUMNI ASSOCIATION,
INC., and JOHNNY L. MCCRAY, JR., Individually,

      Defendants.

_____/

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff, Bethune-Cookman University, Inc. ("Plaintiff" or "B-CU"), pursuant to Fed. R. Civ. P. 56, moves this Court for an Order granting summary judgment on Counts I, II, IV, VI, VII, VIII, IX, and X of Plaintiff's First Amended Verified Complaint [D.E. 33]. In support of this Motion, Plaintiff states the following.[1]

## BACKGROUND

A university such as B-CU can have only <u>one</u> official "alumni association." And B-CU, alone, as the sole owner of all rights to its registered trademarks, name, logo, and brand, is the <u>only</u> entity with the right to decide <u>who</u> may use its marks and represent themselves as the school's "alumni association." To allow otherwise, as courts have noted, would inherently and inevitably lead to mass confusion.[2]

---

[1] Where appropriate, Defendants are separately referred to as "DMMBNAA," "MMBNAA," or "MCCRAY," respectively.  There is no substantive distinction between Defendants DMMBNAA and MMBNAA, both entities are active. *See* Ex. A (excerpts from sunbiz.org).

[2] *See, e.g, Oakwood Univ., Inc. v. Oakwood Univ. Alumni Ass'n*, 2020 WL 4732074 (N.D. Ala. Aug. 14, 2020).

This is precisely the type of confusion and chaos trademark law was enacted to prevent. Here, B-CU is entitled to summary judgment on its trademark and related claims to prevent Defendants from continuing to use B-CU's marks and logos to deceive and confuse B-CU alumni while soliciting donations intended for B-CU and its one, and only, official Alumni Association.

The founder of B-CU, Dr. Mary McLeod Bethune, started a school for girls in 1904, which later became Bethune-Cookman College, Inc. and thereafter, Bethune-Cookman University, Inc., the Plaintiff in this case. Defendants market themselves as an "alumni association" of B-CU, soliciting donations from University alumni and the public for the purported benefit of B-CU and its students, but have no current affiliation with B-CU and are prohibited from using B-CU's registered trademarks or raising money on its behalf.

As set forth in the First Amended Verified Complaint, on Sept. 1, 2021, B-CU's Board of Trustees voted to disassociate from Defendants as B-CU was moving towards establishing a Direct Support Organization ("DSO") to positively promote and support its students' efforts and more direct, efficient and effective alumni engagement, and sufficient direction and control over its fundraising activities. D.E. 33 at ¶¶ 5-7. B-CU also learned that Defendants had not filed the required IRS Form 990 tax returns since 2016 (among other improprieties), losing their tax-exempt status with the IRS and putting B-CU's accreditation and reputation at risk. *Id*. Unfortunately, Defendants defiantly refused B-CU's request to cease operations, refused to stop making use of B-CU's trademarks, logos, mascot, and brand, even long after B-CU was forced to file this lawsuit two years ago. Indeed, as the undisputed record evidence cited herein reflects, Defendants' widespread, long-running infringement continues to this day.  Defendants' conduct has

caused extensive actual confusion among B-CU alumni and the public and must be permanently enjoined.

## SUMMARY OF ARGUMENT

B-CU is entitled to summary judgment because the undisputed record evidence amply demonstrates that Defendants' actions violate federal and state trademark law, which protect against infringement of registered trademarks, false designation of origin, and deceptive and unfair trade practices. Defendants used, and continue to use, B-CU's registered trademarks and confusingly similar marks, without consent, in commerce, to solicit financial support from donors, deceiving donors into believing they are supporting B-CU. This conduct has confused B-CU's alumni and the public, and infringes B-CU's registered trademarks in violation of § 32 of the Lanham Act and Florida law.

Defendants' also use a wide variety of other indicia to falsely suggest affiliation with B-CU, including Dr. Bethune's name, image, and likeness; images of B-CU's campus, its football team, mascot, marching band, and B-CU's distinctive maroon and gold color scheme. Defendants' make false or misleading representations of fact in connection with their solicitation of funds from B-CU's alumni and the public. These actions have confused B-CU's alumni and the public, amounting to false designation of origin in violation of § 43 of the Lanham Act and Florida law.

Defendants' infringing conduct was done at the direction of Defendant MCCRAY, a Florida attorney and the corporate Defendants' President. Even after B-CU filed this lawsuit naming MCCRAY, individually, sent out blast emails to thousands of alumni falsely identifying himself as "President, Bethune-Cookman University." MCCRAY has never been B-CU's President. Defendants, at the direction of MCCRAY, displayed that letter on

their website's homepage for months while this suit was pending, while soliciting donations from B-CU's alumni, removing it only after MCCRAY was questioned about it at deposition. No reasonable jury could find Defendants' pattern of conduct was anything other than a deliberate attempt to mislead and confuse B-CU alumni. MCCRAY is individually liable for B-CU's recoverable damages under the Lanham Act and Florida law. Under the Lanham Act and Florida law, B-CU is entitled to damages of at least $1,726,783, its attorneys' fees, and a broad, permanent injunction. *See, e.g., Oakwood*, 2020 WL 4732074, at *23 (enjoining former alumni association from using university's intellectual property on nearly identical facts).

<u>**STATEMENT OF MATERIAL FACTS**</u>

All facts material to this Motion for Summary Judgment ("Motion") are set forth in this Statement of Material Facts ("SMF") and associated exhibits.

1.      B-CU owns U.S. Trademark Registration No. 3010916 for the mark BETHUNE-COOKMAN.  [D.E. 33 at Ex. B]; Ex. B (Defs. Resp. to Request for Admission ("RFA") No. 1).

2.      U.S. Trademark Registration No. 3010916 for the mark BETHUNE-COOKMAN is incontestable.  [D.E. 33 at ¶ 35]; Ex. C at 4 (USPTO's acknowledgement of declaration of incontestability).

3.      B-CU owns U.S. Trademark Registration No. 2997255 for the mark BETHUNE-COOKMAN.  [D.E. 33 at Ex. C]; Ex. B (Defs. Resp. to RFA No. 2).

4.      U.S. Trademark Registration No. 2997255 for the mark BETHUNE-COOKMAN is incontestable.  [D.E. 33 at ¶ 35]; Ex. C at 1 (USPTO acknowledgement).

5.       B-CU owns Florida Trademark Registration No. T06000001446 for the mark BETHUNE-COOKMAN.  [D.E. 33 at Ex. D]; Ex. B (Defs. Resp. to RFA No. 3).

6.       B-CU owns U.S. Trademark Registration No. 1974478 for the composite mark depicted therein (the "UNIVERSITY SEAL").  [D.E. 33 at Ex. G.]; Ex. B (Defs. Resp. to RFA No. 6).

7.       U.S. Trademark Registration No. 1974478 is incontestable.  [D.E. 33 at ¶ 35]; Ex. C at 2 (USPTO acknowledgement).

8.       B-CU owns Florida Trademark Registration No. T11000000242 for the UNIVERSITY SEAL.  [D.E. 33 at Ex. H]; Ex. B (Defs. Resp. to RFA No. 7).

9.       B-CU owns U.S. Trademark Registration No. 4406777 for the logo depicted therein ("WILDCAT LOGO").  [D.E. 33 at Ex. I]; Ex. B (Defs. Resp. to RFA No. 8).

10.      U.S. Trademark Registration No. 4406777 is incontestable.  [D.E. 33 at ¶ 35]; Ex. C at 5 (USPTO acknowledgement).

11.      B-CU owns U.S. Trademark Registration Nos. 6983241; 6960410; 6983242; 6826252; 6983239; and 6983240 for the logo depicted therein ("INTERLOCKING BC"). Ex. D (certificates of registration); Ex. B (Defs. Resp. to RFA No. 9).[3]

12.      B-CU operates its own alumni association.  Ex. T (Woodard Aff. at ¶ 6).

13.      Defendants do not have a license or consent from B-CU to use the mark BETHUNE-COOKMAN.  Ex. B (Defs. Resp. to RFA No. 10).

14.      Defendants do not have a license or consent from B-CU to use the UNIVERSITY SEAL.  Ex. B (Defs. Resp. to RFA No. 12).

---

[3] In RFA No. 9, the registrations were identified by their corresponding application serial numbers:  90863047; 90863045; 90863053; 90863032; 90862998; and 90863036.

15.     Defendants do not have a license or consent from B-CU to use the WILDCAT LOGO.  Ex. B (Defs. Resp. to RFA No. 13).

16.     Defendants do not have a license or consent from B-CU to use the INTERLOCKING BC.  Ex. B (Defs. Resp. to RFA No. 14).

17.     Defendants used the mark BETHUNE-COOKMAN in commerce after September 2021.  Ex. AA (McCray Dep. Ex. 12-18; authenticated at D.E. 155-1 at 155:21-156:13; 160:9-18; 161:23-162:19; 164:6-23; 167:21-168:11; 169:22-170:12; 171:9-15; 171:21-172:13; 174:16-175:20; 176:14-177:18; 178:14-180:5); [D.E. 157-2 (Facebook page excepts)]; Ex. CC (authenticated capture of content of D.E. 157-2)[4]; Ex. E (BCU3214-17; President BCU); Ex. F (BCU3244-56); Ex. G (BCU3487-90); Ex. HH (bearing Defs.' Bates nos. DEF 1878-89).

18.     Defendants used the UNIVERSITY SEAL in commerce after September 2021.  Ex. AA; [D.E. 157-2]; Ex. CC (authenticated capture of content of D.E. 157-2); Ex. F (BCU3244-56); Ex. HH.

19.     Defendants used the WILDCAT LOGO in commerce after September 2021.  Ex. AA; [D.E. 157-2]; Ex. CC (authenticated capture of content of D.E. 157-2); Ex. H (BCU3236); Ex. I (BCU3257); Ex. J (BCU3258-59); Ex. HH.

20.     Defendants used the INTERLOCKING BC in commerce after September 2021.  [D.E. 157-2]; Ex. CC (authenticated capture of content of D.E. 157-2); Ex. F (BCU3244-56); Ex. HH.

---

[4] Although much of the infringing content on Defendants' Facebook page was first posted before B-CU dissociated from Defendants, the content remains online today. D.E. 157-2 reflects the way B-CU's Registered Marks appear at or about the date of this filing.

21.     Defendants solicit money from B-CU alumni and the general public.  Ex. B (Defs. Resp. to RFA No. 20).

22.     Defendant MCCRAY was falsely identified as "President, Bethune-Cookman University" on Defendants' website www.mmbnaa.org.  Ex. K (BCU3368-71); Ex. B (Defs. Resp. to RFA No. 22 (DMMBNAA/MMBNAA) and No. 21 (MCCRAY)); Ex. X (BCU2143).

23.     The document produced by B-CU as Bates No. BCU002143 is a true and correct representation of a letter from MCCRAY published on Defendants' website on Aug. 9, 2023. Ex. B (Defs. Resp. to RFA No. 23 (DMMBNAA/MMBNAA) and No. 22 (MCCRAY)); [D.E. 155-1 (MCCRAY Dep. at 11:12-13:19, Aug. 9, 2023)].

24.     The document produced by B-CU as Bates No. BCU002143 is a true and correct representation of a letter from MCCRAY that was distributed by Defendants via email on March 13, 2023.  Ex. B (Defs. Resp. to RFA No. 24 (DMMBNAA/MMBNAA) and No. 23 (MCCRAY)).

25.     Defendant MCCRAY has never been the President of Bethune-Cookman University.  Ex. B (Defs. Resp. to RFA No. 25 (DMMBNAA/MMBNAA) and No. 24 (MCCRAY)).

26.     Defendants use the name "Dr. Mary McLeod Bethune National Alumni Association" in commerce.  Ex. B (Defs. Resp. to RFA No. 26 (DMMBNAA/MMBNAA)).

27.     Defendants' website is located at the URL www.mmbnaa.org. Ex. B (Defs. Resp. to RFA No. 28 (DMMBNAA/MMBNAA)).

28.     Defendants operate the Facebook page located at the URL www.facebook.com/mmbnaalumni/.  Ex. Y (placeholder of partial production from Defendants identifying page as "mmbnaalumni").

29.     Defendants operate the X (formerly known as Twitter) page located at https://twitter.com/naabcu  , which includes depictions of the BETHUNE COOKMAN and UNIVERSITY SEAL registered marks.  Ex. Z (excerpt from page); [D.E. 155-2; Barfield Dep. at 32:3-34:21 (authenticating page)].

30.     Despite previously operating pursuant to a Memorandum of Understanding with B-CU, Ex. 23; [D.E.155-1; McCray Dep. at 261:7-266:8 (authenticating)], Defendants are not affiliated with B-CU.  Ex. B (Defs. Resp. to RFA No. 32 (DMMBNAA/MMBNAA) and No. 31 (MCCRAY)).

31.     Defendant MCCRAY controls content on the website located at the URL www.mmbnaa.org, Defendants' chapter websites, and emails distributed by Defendants using third-party vendor Constant Contact. [D.E. 155-1; McCray Dep. at 11:12-14:5; 46:14-25]; [D.E. 138-1; Shorter 30(b)(6) Dep. at 59:14-21; 63:8-24]; Ex. BB; [D.E. 155-1; McCray Dep. at 290:13-20]; [D.E. 155-1; McCray Dep. at 304:14-305:16].



32.     Defendants use the logo                                    in commerce in connection with the solicitation of funds from B-CU alumni and the general public, which includes a depiction of Dr. Bethune.  Ex. K; [D.E. 157-2]; Ex. CC (authenticated capture of content of D.E. 157-2).

33.     Defendants' use B-CU in commerce.   Ex. AA; Ex. M; Ex. CC (authenticated capture of content of D.E. 157-2).

34.     Defendants use the colors maroon and gold in commerce in connection with the solicitation of funds from B-CU alumni and the general public.  Ex. K; [D.E. 155-1; McCray Dep. at 19:20-20:1]; Ex. DD (Logo Brand Guide produced by Defendants).

35.     Defendants use Dr. Mary McLeod Bethune's name, image, and likeness, images of B-CU, images of B-CU's football team, marching band, campus, B-CU's distinctive maroon and gold color scheme, and the term "alumni association" to solicit funds from alumni of B-CU. [D.E. 22-1; Perry Aff. at ¶¶ 27-28]; [D.E. 33 at ¶¶ 9; 72].

36.     Defendants' website falsely suggests it "supports B-CU" and "seeks to cultivate a sense of pride, commitment, dedication, and a lifelong relationship among all alumni with B-CU".  Ex. L (BCU3484-86); [D.E. 155-2; Barfield Dep. at 133:3-136:11 (authenticating)].

37.     Defendants' website invites visitors "to invest in the souls of students . . . by purchasing a brick and creating a lasting legacy at this historic institution" and "[f]unds from the B-CU Brick Campaign will support the sustainability of B-CU and assist in funding need-based scholarships."  Ex. M (BCU3491-92).

38.     Defendants' website invited visitors to "come together and connect with all things B-CU and continue the legacy of our founder Dr. Mary McLeod Bethune."   Ex. N (BCU3320-23); [D.E. 155-2; Barfield Dep. at 106:8-109:20 (authenticating)].

39.     Defendants' website stated "[m]uch has changed at Bethune-Cookman University, whether your last time on campus was your graduation day or just last year. B-CU is always evolving and each new graduating class creates a new chapter in our beloved Alma Mater's illustrious story. Many of the places where you made memories remain and await your return."   Ex. O (BCU3349-51); [D.E. 155-2; Barfield Dep. at 111:19-112-21 (authenticating)].

40.    Defendants' website claims it was "[f]ounded by Dr. Mary McLeod Bethune in 1932" and that their mission is to support "new and returning students of Bethune-Cookman University," Ex. P (BCU3260-63); [D.E. 155-2; Barfield Dep. at 116:21-119:16 (authenticating)], despite admitting that they would provide scholarships to students attending an HBCU other than B-CU.  Ex. Q (Starks 30(b)(6) Depo. at 70:19-71:14).

41.    Defendants' website claims "[i]t's our job to keep all Bethune graduates connected to each other and B-CU we all love through live events, volunteer opportunities, scholarship programs, and century long traditions."  Ex. R (BCU3292-95); [D.E. 155-2; Barfield Dep. at 130:16-20 (authenticating)].

42.    Defendants were defiant in response to B-CU's demand that Defendants cease using its Registered Marks, stating "Bethune-Cookman University Belongs to All of Us!" on their website.  Ex. S (BCU3488-90).

43.    Defendants continue to display B-CU's Registered Marks on their social media pages, despite B-CU's repeated demands that they stop and after more than two years of litigation.  [D.E. 157-2]; Ex. CC (authenticated capture of content of D.E. 157-2).

44.    B-CU, founded in 1904, has many graduates, some of whom are less tech-savvy than today's youth. [D.E. 155-1; McCray Dep. 47:10-12]; Ex. T (Woodard Aff., ¶17).

45.    Defendants refused to remove a letter from the homepage of www.mmbnaa.org wherein Defendant McCray falsely identifies himself at "President – Bethune-Cookman University" until at least after August 9, 2023.  [D.E. 155-1 (MCCRAY Dep. at 11:12-13:19, Aug. 9, 2023).]

46.    Defendants mirror official University events. Ex. T (Woodard Aff. at ¶ 32).

47.     Defendants' repeatedly withheld evidence of infringement during the discovery phase of this case. [*See, e.g.*, D.E. 186.]

48.     According to Defendants' website, they operate at least 29 local chapters, Ex. U (BCU3282-85), each of which is a part of Defendants.  Ex. B (Defs. Resp. to RFA No. 21 (DMMBNAA/MMBNAA); [D.E. 155-1; McCray Dep. at 46:1-13].

49.     Defendants' conduct has caused numerous instances of actual confusion among alumni, vendors, and the public.  Ex. T (Woodard Aff.); Ex. V (Rich Aff.)

<u>ARGUMENT</u>

I.     **STANDARD OF REVIEW**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it may affect the outcome of the suit under the governing law." *New World Music Co. (LTD) v. Tampa Bay Downs, Inc.*, 2009 WL 35184, at *3 (M.D. Fla. Jan. 6, 2009). Here, no genuine issues of fact exist as to any of B-CU's claims and summary judgment is proper as a matter of law.

II.     **B-CU is Entitled to Summary Judgment on Counts I and VIII (Infringement of Registered Trademarks under § 32 of the Lanham Act (15 U.S.C. § 1114)).**

"Trademark infringement under the Lanham Act occurs when a defendant, without consent, uses 'in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark' that 'is likely to cause confusion' that a relationship exists between the parties." *FCOA LLC v. Foremost Title & Escrow Servs. LLC*, 57 F.4th 939, 946 (11th Cir.

2023), *cert. denied*, No. 22-1249, 2023 WL 6377990 (U.S. Oct. 2, 2023) (quoting 15 U.S.C. § 1114(1)).  "For a trademark infringement claim, a plaintiff must demonstrate (1) that it owns a valid mark with priority, and (2) that the defendant's mark is likely to cause consumer confusion with the plaintiff's mark."  *Id.* (citing *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999)).

### A.  B-CU's Registered Trademarks are Presumed Valid and Have Priority.

"When a mark has been registered with the PTO, there is a rebuttable presumption that the marks are protectable or distinctive." *Pinnacle Advert. & Mktg. Grp., Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1004 (11th Cir. 2021) (cleaned up).  "The owner of a registered trademark discharges his burden of proof on the first element by providing a certificate of registration issued by the United States Patent and Trademark Office."  *High Tech Pet Prods. v. Shenzhen Jianfeng Elec. Pet Prod. Co.*, 2015 WL 926048, at *4, (M.D. Fla. Feb. 12, 2015).  Moreover, five years of continuous use "renders [a] registered mark incontestable."  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000).  "An incontestable mark 'is presumed to be . . . a relatively strong mark.'" *PlayNation Play Sys., Inc. v. Velex Corp.*, 924 F.3d 1159, 1166 (11th Cir. 2019) (quoting *Dieter v. B & H Indus. of Southwest Fla., Inc.*, 880 F.2d 322, 329 (11th Cir. 1989).

B-CU owns U.S. trademark registrations for the marks BETHUNE-COOKMAN, the UNIVERSITY SEAL, the WILDCAT LOGO, and the INTERLOCKING BC (the "Registered Marks").  SMF at ¶¶ 1; 3; 6; 9; 11.  The BETHUNE-COOKMAN, the UNIVERSITY SEAL, and the WILDCAT LOGO registrations are incontestable.  SMF at ¶¶ 2; 4; 7; 10.  B-CU's ownership of its Registered Marks is acknowledged by Defendants.  SMF at ¶¶ 1; 3; 6; 9;

11 (Defs. Resp. to RFA Nos. 1; 2; 6; 8; 9). Therefore, the first element of B-CU's trademark infringement claim – ownership of a valid mark with priority – is established.[5]

### B. Defendants' Use of B-CU's Registered Trademarks, and Confusingly Similar marks, without Consent Creates a Likelihood of Confusion.

The second element of B-CU's trademark infringement claim – whether Defendants' use of B-CU's Registered Marks, and confusingly similar marks, is likely to cause confusion with B-CU's Registered Marks – is also established. "The likelihood of confusion analysis involves two steps. At step one, the court considers several factors which can provide circumstantial evidence of likelihood of confusion." *FCOA,* 57 F.4th at 947. These factors include:

> (1) the strength of the allegedly infringed mark; (2) the similarity of the infringed and infringing marks; (3) the similarity of the goods and services the marks represent; (4) the similarity of the parties' trade channels and customers; (5) the similarity of advertising media used by the parties; (6) the intent of the alleged infringer to misappropriate the proprietor's goodwill; and (7) the existence and extent of actual confusion in the consuming public.

*Id*. The Eleventh Circuit has also considered "consumer sophistication as a separate factor or circumstantial fact relevant to determining likelihood of confusion." *Id*.

"At step two, the court weighs each of the relevant circumstantial facts— independently and then together—to determine whether the ultimate fact, likelihood of confusion, can reasonably be inferred." *FCOA,* 57 F.4th at 947–48 (citing *Frehling,* 192

---

[5] "The doctrine of licensee estoppel prevents licensees from challenging the validity of licensors' trademarks." *Castell Enterprises, Inc. v. RB Rest. Grp., Inc.*, 2012 WL 13013256, at *2 (S.D. Fla. Mar. 5, 2012). All prior use of the Registered Marks by Defendants, *e.g.*, as memorialized in the parties' Memorandum of Understanding, SMF at ¶ 30, inured to the benefit of B-CU. *Id.*; *see also* J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 18:52 (4th ed. 2011) (by using a licensor's mark, a licensee accrues no rights against the licensor).

F.3d at 1335). "In drawing the ultimate inference about likelihood of confusion, the two most important circumstantial facts are respectively ***actual confusion and the strength of the mark***." *Id.* (citation omitted) (emphasis added).

"This two-step analysis is the same whether the court is deciding likelihood of confusion at a bench trial or entertaining a motion for summary judgment." *Id.* (citing *Frehling*, 192 F.3d at 1335; *Tana*, 611 F.3d at 774–82.). "Courts may grant summary judgment on likelihood of confusion even if some circumstantial facts favor the non-movant because the two-step analysis presupposes that the various circumstantial facts may point in opposing directions." *Id.* (cleaned up).

### 1.    B-CU's Registered Marks are Strong.

As noted, B-CU's incontestable Registered Marks are presumed distinctive and strong. *PlayNation*, 924 F.3d at 1166.[6] The strength of B-CU's Registered Marks is undisputed by Defendants.

### 2.    Defendants' Use B-CU's Registered Marks, and Confusingly Similar Marks, in Commerce without B-CU's Consent.

The use of a trademark in connection with the sale or advertisement of goods or services is a "use in commerce" capable of supporting a trademark infringement claim under the Lanham Act. *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218–19 (11th Cir. 2008); *see also Itamar Med., Ltd. v. Ectosense NV*, 2021 WL 12095119, at *6 (S.D. Fla. Dec. 29, 2021) ("[L]iability under the Lanham Act can be based on advertising, promotion, or use of a website alone.") (citation omitted).

---

[6] Further, one Registered Marks has been used in commerce for nearly 100 years, another for over 50 years, as reflected in their respective registrations. *See*, SMF at ¶¶ 3; 4; 6.

i.    **Defendants Use B-CU's Registered Marks in Commerce Without Consent.**

Undisputed record evidence shows Defendants have repeatedly published, disseminated, and publicly displayed B-CU's Registered Marks, continuing even long after B-CU was forced to initiate this action, on their websites, multiple social media pages, and in promotional flyers and blast emails, all without B-CU's consent. SMF at ¶¶ 13-20; 22-24. Defendants' infringing use is in commerce.   SMF at ¶ 21 (admitting Defendants solicit funds from B-CU alumni and public); SMF at ¶ 17 (referencing uses in commerce inviting visitors to "donate" to Defendants). Defendants admit B-CU does not consent to these uses of its Registered Marks.  SMF at ¶¶ 13-16.[7]

ii.    **Defendants Use Marks Confusingly Similar to B-CU's Registered Marks.**

When assessing the similarity of two marks, courts look to similarities in "sight, sound, and meaning," and whether the marks "create a similar overall effect."  *FCOA*, 57 F.4th at 953. In addition to using B-CU's Registered Marks, Defendants use marks confusingly similar to B-CU's Registered Marks in commerce in a manner that causes confusion.  For instance, Defendants use DR. MARY MCLEOD BETHUNE NATIONAL ALUMNI ASSOCIATION, MARY MCLEOD BETHUNE NATIONAL ALUMNI ASSOCIATION, and the "Infringing Logo" depicted at SMF ¶ 32 (the "Infringing Marks"). SMF at ¶¶ 26; 32.   The Infringing Marks incorporate portions of B-CU's registered BETHUNE-COOKMAN mark and the UNIVERSITY SEAL (which itself incorporates the

---

[7] Because Defendants use exact copies of B-CU's Registered Marks, the Court may presume likely confusion exists. *GS Holistic, LLC v. Purple Haze of Seminole, LLC*, 2023 WL 3629705, at *5 (M.D. Fla. May 8, 2023), *adopted*, 2023 WL 3620654 (M.D. Fla. May 24, 2023) (citing *Casa Dimitri Corp. v. Invicta Watch Co. of Am.*, 270 F. Supp. 3d 1340, 1359 (S.D. Fla. 2017)).

name Bethune-Cookman University), the name of B-CU's founder – Dr. Mary McLeod Bethune – and the term "alumni association," and are therefore similar to B-CU's registered marks in sight, sound, and meaning, and falsely suggest Defendants' affiliation with B-CU. *Oakwood Univ.,* 2020 WL 4732074, at \*18 (alumni activities are a necessary activity undertaken by a university in support of its educational services and mission). Thus, the second factor - similarity of the infringed and infringing marks – weighs in B-CU's favor and is undisputed.

### 3. Defendants Use B-CU's Registered Marks, and Confusingly Similar Marks, in Connection with Identical Goods and Services.

B-CU and Defendants each operate an "alumni association," whereby money is solicited and raised from B-CU alumni. SMF at ¶ 12 (Woodard Aff., ¶ 6). The parties also educate B-CU's alumni and the public about Dr. Bethune's legacy and aim to foster a continuing relationship between B-CU and its alumni.  The parties also host social events, such as football game tailgate parties and networking events.  Ex. T (Woodard Aff., ¶ 11). Thus, the third factor - similarity of goods and services – weighs in B-CU's favor and is undisputed.

### 4. The Parties Use the Same Channels of Trade and Advertising Media to Solicit Donations from the Same Consumers.

B-CU and Defendants each solicit donations through the same channels of trade, and same media, from the same alumni of B-CU.  As set forth in the Woodard Aff., B-CU operates the website www.bcualumni.com and various social media accounts to solicit money from B-CU alumni and offer membership in B-CU's official alumni association. Ex. T (Woodard Aff., ¶ 6); Ex. EE (B-CU's Resp. Int. No. 5). B-CU employs direct-to-alumni email marketing campaigns to raise awareness of the Alumni Association and raise funds.

Ex. T (Woodard Aff., ¶ 6).  Likewise, Defendants operate many websites, including at the URL www.mmbnaa.org, and solicit money from B-CU alumni via these websites. SMF at ¶ 27 (Defs. Resp. RFA No. 28).  Defendants also operate social media pages on platforms such as Facebook and X (Twitter). SMF at ¶¶ 28-29. Thus, the fourth and fifth factors in the likelihood of confusion analysis - the similarity of the trade channels, customers, and advertising media – weigh in B-CU's favor and is undisputed.

### 5.  Defendants Intentionally Misappropriate B-CU's Goodwill.

Intent can be proven with direct or circumstantial evidence. *Jellibeans, Inc. v. Skating Clubs of Ga., Inc*., 716 F.2d 833, 843 (11th Cir. 1983). The presence of intent can "justify the inference that there is confusing similarity." *Frehling Enters.*, 192 F.3d at 1340. A defendant's repeated, continuing failure to take steps to effectively prevent ongoing infringement within its organization, despite statements to the contrary, is sufficient circumstantial evidence of bad faith intent.[8] Here, Defendants intentionally misappropriate B-CU's goodwill and seek to create confusion as to the parties' affiliation. Despite B-CU's repeated demands that Defendants cease using B-CU's Registered Marks, more than two years of litigation, and Defendants' admission that they have no license or consent to use the Registered Marks (SMF at ¶¶ 13-16), Defendants continue to display B-CU's Registered Marks on their websites and social media pages to raise money from B-CU alumni. SMF at ¶¶ 17-25. The only reasonable conclusion is that Defendants are intentionally using the Registered Marks to confuse alumni and the public into believing

---

[8] *See, e.g., Am. Historic Racing Motorcycle Ass'n, Ltd. v. Team Obsolete Promotions*, 33 F. Supp. 2d 1000, 1006 (M.D. Fla. 1998), *aff'd sub nom. Am. Historic v. Team Obsolete,* 233 F.3d 577 (11th Cir. 2000) (recognizing that agreement to stop using trademark, and then resuming use, may support a finding of bad faith).

Defendants are the official alumni association of B-CU when they are not.

Defendants' intent to cause confusion is also readily apparent in Defendants' refusal to correct or remove content on the homepage of their website, www.mmbnaa.org, wherein Defendant McCray falsely identified himself as "President, Bethune-Cookman University" for five months. This same letter was distributed directly to thousands of B-CU's alumni via email through third-party vendor Constant Contact on March 13, 2023, SMF at ¶¶ 22-24; [D.E. 86 at 5], and despite repeatedly being advised of the presence of the letter on Defendants' website, the letter remained on Defendants' homepage until at least Aug. 10, 2023.  SMF at ¶¶ 22-24.  Defendants' intent can also be inferred from the way Defendants "mirror" or "mimic" official University events. *See* Woodard Aff., ¶ 32. Thus, the sixth factor in the likelihood of confusion analysis - the intent of the alleged infringer to misappropriate the proprietor's goodwill – is clear and weighs in B-CU's favor.

### 6.   Defendants' Conduct Causes Actual Confusion Among the Relevant Consuming Public.

In the Eleventh Circuit "actual confusion [is] one of the most important factors." *Hard Candy, LLC v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1362 (11th Cir. 2019); *see also Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1264 (11th Cir. 2016) ("the best evidence of a likelihood of confusion"); *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir. 2010) ("the most weighty consideration"). Although there is "no hard-and-fast rule regarding the number of instances [of actual confusion] required to prevail," *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 139 (11th Cir. 2022), "the quantum of evidence needed to show actual confusion is relatively small." *Id*. (quoting *Jellibeans, Inc.,* 716 F.2d at 845.); *see also Safeway Stores*, 675 F.2d at 1166–67 (two instances of confusion); *Caliber Automotive*,

18

605 F.3d at 937–38 (two instances of confusion weighed in plaintiff's favor on summary judgment); *PlayNation,* 924 F.3d at 1164 (two instances); *AmBrit,* 812 F.2d at 1544 (four instances). As set forth in the Woodard Aff., B-CU has endured dozens of instances of actual confusion between B-CU and Defendants, continuing over the past two-plus years, despite extensive efforts to dispel the rampant confusion. Ex. T; *see also* Ex. V (Rich Aff. (mistakenly donating money to Defendants in belief they were affiliated with B-CU).

Moreover, "[s]urvey evidence is one way a party can demonstrate a likelihood of trademark confusion." *Superior Consulting Servs., Inc. v. Shaklee Corp.*, 2021 WL 4438518, at *11 (11th Cir. Sept. 28, 2021). The extensive survey evidence in this case, un-rebutted and undisputed, strongly supports a determination that Defendants' conduct creates a substantial likelihood of confusion.  Ex. FF (Expert Report of Mark Keegan, concluding "[o]ver two-thirds of test cell respondents—67.2 percent—indicated a belief that the [Defendants'] marketing materials are put out by B-CU; are affiliated, connected, or associated with B-CU; or that the [Defendants] are sponsored or approved by B-CU."). Moreover, given the high rate of confusion, it is indisputable that Defendants' attempt to circumvent liability in this case by placing a disclaimer that they are not affiliated with B-CU is insufficient to overcome confusion. *Id*.[9]  Thus, the seventh factor - the existence and extent of actual confusion - weighs in B-CU's favor and is undisputed.  Accordingly, B-CU is entitled to summary judgment on Counts I and VIII.

---

[9] Indeed, as demonstrated in the Keegan Report, the consumer survey reflects Defendants' occasional use of a disclaimer (or even the use of a much larger, more conspicuous disclaimer) does little or nothing to reduce the reported level of consumer confusion. *See*, Keegan Expert Report at 22. As the *Oakwood* court noted, use of "alumni association" with an educational institution's name is inherently associated with the institution in consumers' perception. 2020 WL 4732074, at *23.

III.   **B-CU is Entitled to Summary Judgment on Counts II and IX (False Designation of Origin, § 43 of the Lanham Act, 15 USC § 1125(a)).**

Section 1125(a) of the Lanham Act "creates a federal remedy 'that goes beyond trademark protection.'"  *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp*., 539 U.S. 23, 29 (2003)). Section 1125 (a) provides, in pertinent part:

> (1) Any person who, on or in connection with any goods or services, . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . shall be liable in a civil action by any person . . . likely to be damaged by such act.

15 U.S.C. § 1125(a).

For B-CU to prevail on its false designation of origin claim, it must show it was "actually or likely to be damaged by the fact that the defendant used a false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which was likely to cause confusion, . . . mistake, or to deceive ... as to the origin, sponsorship, or approval" of Defendants' goods and services.  *Suntree Techs., Inc. v. Ecosense Int'l, Inc.*, 693 F.3d 1338, 1347–48 (11th Cir. 2012) (citations omitted).

**A.  Defendants' Conduct Falsely Suggests Affiliation with B-CU.**

Defendants are pretending to be the official alumni association of B-CU when they are not.  Defendants use Dr. Mary McLeod Bethune's name, image, and likeness, images of B-CU, its campus, buildings, football team, mascot, marching band, distinctive maroon and gold color scheme, and the term "alumni association" to solicit funds from alumni of B-CU.  SMF at ¶ 35.  Defendants also refer to their members as "Wildcats."  *See, e.g.*,

Ex. HH.  Defendants also make false and misleading representations of fact suggesting they are affiliated with B-CU when they are not. [D.E. 33 at ¶¶ 96; 159]; SMF at ¶¶ 32-42. Defendants, however, are not affiliated with B-CU.  SMF at ¶ 30.  Indeed, B-CU terminated its relationship with Defendants, and thus terminated any express or implied license or consent of any kind, more than two years ago. [D.E. 33.]

**B. Defendants' Conduct Creates Confusion.**

The factors for establishing a likelihood of confusion for false designation of origin under 15 U.S.C. § 1125(a) are identical to those for infringement of a registered mark under 15 U.S.C. § 1114.  *Tana v. Dantanna's*, 611 F.3d 767, 773, n.5 (11th Cir. 2010). Nevertheless, not all of these factors may be particularly helpful in any given case. *Suntree Techs., Inc. v. EcoSense Int'l, Inc.*, 802 F. Supp. 2d 1273, 1281 (M.D. Fla. 2011), aff'd, 693 F.3d 1338 (11th Cir. 2012).  "Rather than mechanically applying these factors without regard to context, courts must focus on the ultimate question of whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way."  *Id*. (cleaned up).

Although B-CU clearly has well-established trademark rights in its Registered Marks, *see* Section II, *supra*, a consideration of these rights is not a prerequisite to determining Defendants' liability under § 43 of the Lanham Act.  *See, e.g., Manchester Farms, Inc. v. Supremas, Inc.*, 165 F. Supp. 3d 1366, 1372–73 (M.D. Ga. 2016) (recognizing need to consider only subset of likelihood of confusion factors outside trademark infringement context). Thus, to determine whether Defendants' false designation of origin, false or misleading description of fact, or false or misleading representation of fact, creates a likelihood of confusion, the Court need only consider: (1)

the similarity between the goods or services; (2) the similarity of the parties' actual sales methods; (3) Defendants' intent to misappropriate B-CU's goodwill; and (4) the existence and extent of actual confusion in the consuming public.  *Id.* (citing *Tana*, 611 F.3d at 774–752).  As set forth above, Defendants' use the name of B-CU's founder, her image, likeness, images of B-CU's campus and buildings, and B-CU's colors and other indicia, and false and misleading representations of fact, to present themselves as the official alumni association of B-CU when they are not.  [D.E. 33 at ¶¶ 96; 159]; SMF at ¶¶ 32-42. Defendants' conduct has caused rampant and widespread actual confusion among B-CU's alumni, vendors, and the general public.  Ex. T (Woodard Aff.).

### C. Defendants' Conduct Harms B-CU.

The confusion caused by Defendants' conduct diverts alumni donation funds from B-CU, and has forced B-CU to undertake substantial efforts to correct confusion amongst B-CU's alumni. Ex. T (Woodard Aff.).  Moreover, B-CU has suffered harm to its reputation and goodwill because of Defendants' conduct.  *Id*. Accordingly, B-CU is entitled to summary judgment on Counts II and IX.

### IV. B-CU Is Entitled to Summary Judgment on Counts IV and VI (Florida Trademark Infringement and Common Law Trademark Infringement).

"The analysis of Florida statutory and common law claims of [] trademark infringement and unfair competition [are] the same as the analysis of a § 43(a) claim." *Lanard Toys Ltd. v. Dolgencorp, LLC*, 2021 WL 8200197, at *32 (M.D. Fla. Aug. 20, 2021) (citing *Gift of Learning Found., Inc. v. TGC, Inc.*, 329 F.3d 792, 802 (11th Cir. 2003)). "The analysis of liability for Florida common law trademark infringement is the same as the analysis of liability for trademark infringement under section 32(a) of the Lanham Act." *E-Z-Dock, Inc. v. KonaDocks LLC*, 2022 WL 8221613, at *4 (M.D. Fla. Aug. 5, 2022),

*report and recommendation adopted*, 2022 WL 3974333 (M.D. Fla. Sept. 1, 2022). B-CU owns Florida trademark registrations for the marks BETHUNE-COOKMAN and the UNIVERSITY SEAL. SMF at ¶¶ 5; 8. Defendants acknowledge B-CU's ownership of these registrations. *Id*. (Def. Resp. to RFAs No. 3; 7). Thus, because Defendants are liable for trademark infringement and false designation of origin under the Lanham Act, section II, *supra*, B-CU is also entitled to summary judgment on Counts IV and VI.

**V.     B-CU is Entitled to Summary Judgment on Counts VII and X (Florida Deceptive and Unfair Trade Practices Act).**

"To prevail on a FDUTPA claim, the plaintiff must show: 1) a deceptive act or unfair practice; 2) causation; and 3) actual damages." *Allen v. Jacksonville Univ.*, 2022 WL 17668615, at *14 (M.D. Fla. Dec. 14, 2022). "An act is deceptive if it 'is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment.'" *Id*. (quoting *State v. Beach Blvd. Auto., Inc.*, 139 So. 3d 380, 387 (Fla. 1st DCA 2014). "[T]rademark infringement is an unfair and deceptive trade practice that constitutes a violation of FDUTPA." *Lanard Toys*, 2021 WL 8200197, at *32 (cleaned up). Because trademark infringement has been established, B-CU is entitled to summary judgment on its FDUTPA counts as well.

**VI.     B-CU is Entitled to Damages and an Injunction.**

B-CU is entitled to treble damages and attorneys' fees based on, *inter alia*, Defendants' willful use of a counterfeit mark. *See, e.g., Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1183 (11th Cir. 1994) ("If the infringement is intentional . . . and the use of a counterfeit trademark has been proven, then § 1117(b) governs, and the Court is required to treble damages and award attorney's fees unless the Court finds extenuating circumstances."). "A 'counterfeit' is a spurious mark which is identical with,

23

or substantially indistinguishable from, a registered mark." 15 U.S.C.A. § 1127. As set forth herein, Defendants use exact replicas of B-CU's Registered Marks. B-CU is also entitled to its reasonable attorneys' fees and costs under FDUTPA. *Chow v. Chak Yam Chau*, 640 F. App'x 834, 836 (11th Cir. 2015). According to B-CU's damages expert, Mr. Brian Buss, B-CU is entitled to recover at least $1,726,783 in damages from Defendants due to their violations of the Lanham Act and Florida law. Ex. GG (Expert Report of Brian Buss). B-CU is also entitled to broad injunction prohibiting Defendants from continuing their infringing and deceptive trade practices.[10]

Defendant McCray is individually liable for damages under at least the Lanham act and FDUTPA. "The individual liability standard under the Lanham Act does not ask whether the individual participated or engaged in some infringing act; instead, it asks whether he actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to occur." *Edmondson v. Velvet Lifestyles, LLC*, 43 F.4th 1153, 1161 (11th Cir. 2022) (cleaned up). "Under this standard, a 'corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity' is personally liable." *Id*. (quoting *Babbit Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994)). "The standard for liability under FDUTPA is whether someone is a 'direct participant' in the deceptive acts." *State Farm Mut. Auto. Ins. Co. v. Muse*, 2022 WL 413417, at *5 (11th Cir. Feb. 10, 2022). Here, the record shows Defendants' conduct was undertaken at the direction of, and ratified by,

---

[10] *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1288 (11th Cir. 2020) (affirming summary judgment, permanent injunction enjoining use of college's marks); *Ohio State Univ. v. Skreened Ltd.*, 16 F. Supp. 3d 905, 922 (S.D. Ohio 2014) (granting summary judgment permanently enjoining use of university's marks).

MCCRAY, rendering him individually liable.

## VII.   Conclusion

B-CU respectfully requests the Court grant it Summary Judgment on Counts I, II,

IV, VI, VII, VIII, IX, and X of Plaintiff's First Amended Verified Complaint [D.E. 33].[11,12]

Respectfully submitted,
*s/ Gregory W. Herbert*
Gregory W. Herbert
Florida Bar No. 0111510
herbertg@gtlaw.com
Stephen G. Anderson
Florida Bar No. 0105697
andersonst@gtlaw.com
**GREENBERG TRAURIG, P.A.**
450 S. Orange Avenue, Suite 650
Orlando, FL 32801
Telephone No. (407) 420-1000
*Lead Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on January 8, 2024, the foregoing was electronically filed with the

Court via the CM/ECF system, which will send a notice to counsel of record.

*s/Gregory W. Herbert*

---

[11] Further, Defendants' affirmative defenses (D.E. 41 at 21-23) are improperly pled and meritless. *Luxottica Grp. S.P.A. v. Cash Am. E., Inc.*, 198 F. Supp. 3d 1327, 1331 (M.D. Fla. 2016). The sixth defense, "nominative fair use" is not a recognized affirmative defense under the Lanham Act in this Circuit. *Parsons v. Regna*, 847 F. App'x 766, 773-74, n.13 (11th Cir. 2021). Defendants' "fair use" defense requires proof of use of B-CU's Registered Marks: (a) other than as a mark, (b) in a descriptive sense, and (c) in good faith. *3Lions Publ'g, Inc. v. Interactive Media Corp.*, 389 F. Supp. 3d 1031, 1042 (M.D. Fla. 2019). No reasonable jury could find these elements are met on this record.

[12] Due to Defendants' continuing refusal to comply with discovery obligations, B-CU reserves, and respectfully requests, the right to supplement this Motion upon resolution of the outstanding discovery disputes. *See, e.g.*, D.E. 186.