IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BETHUNE-COOKMAN UNIVERISTY,
INC.

      Plaintiff,                                          CASE NO.: 6:22-cv-47-WWB-DAB

v.

DR. MARY MCLEOD BETHUNE NATIONAL
ALUMNI ASSOCIATION, INC., MARY MCLEOD
BETHUNE NATIONAL ALUMNI ASSOCIATION,
INC., and JOHNNY L. MCCRAY, JR., individually,

      Defendants.
_____/

**DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT AGAINST PLAINTIFF**

Defendants DR. MARY MCLEOD BETHUNE NATIONAL ALUMNI ASSOCIATION, INC. (hereinafter "1st MMBNAA"), MARY MCLEOD BETHUNE NATIONAL ALUMNI ASSOCIATION, INC. (hereinafter "2nd MMBNAA")(collectively Corporate Defendants" or MMBNAA) and JOHNNY L. MCCRAY, JR. (hereinafter "Mr. McCray")(collectively with Corporate Defendants, "Defendants"), by and through the undersigned counsel and in accordance with Federal Rule of Civil Procedure 56(c) hereby moves for entry of summary judgement against Plaintiff, BETHUNE-COOKMAN UNIVERSITY (hereinafter "B-CU" or "Plaintiff").

    **I.**       **INTRODUCTION**

This case centers around Plaintiff sending Defendants a cease and desist letter, on September 29, 2021, and the actions taken by Corporate Defendants to continue operations. *See* Ex. N to Dkt. 33. The demands contained in the cease and desist fail to take into consideration the fact that the 1st MMBNAA has been using various of Plaintiff's claimed marks dating back to as early as 1932. *See* Ex. A. This association has continued even as Plaintiff applied and acquired new trademark registrations. Even when a Memorandum of Understanding (hereinafter "MOU") was entered into between the parties on March 17, 2006, the MOU is silent as to the use of any trademarks, effectively granting Defendants a naked license. *See* Ex. B. Yet, though Plaintiff was fully aware of this fact, Plaintiff nevertheless and even though Defendants have offered to cease operations, has continued pressing this matter, going as far as to avoid Defendants' attempts to mediate with Plaintiff.

Though case law allows naming a corporate officer where both the corporation and corporate officer may be jointly and severally liable, but this is only possible when the individual actively and knowingly caused the infringement. With respect to Mr. McCray, in view of how the Corporate Defendants operated, he did not have the requisite control to be a named defendant.

## II.   FACTUAL BACKGROUND

1.  Since 1932, the 1st MMBNAA has operated as the alumni association for Plaintiff. *See* Ex. A.

2. In 1971, the parties agreed to establish the 1st MMBNAA as a 501(c)(3) not for profit business entity and paperwork was done to make this happen. See Ex. C.

3. A Memorandum of Understanding ("MOU") we later drafted and eventually executed between the Parties on March 17, 2006. See. Ex. B.

*4.* The MOU is the only written agreement between the Parties as identified by Plaintiff. The MOU is silent with respect to the use of Plaintiff's trademarks, creating either a naked license arrangement or a clear acquiescence to the use of Plaintiff's marks as clearly omitted in the MOU. *See id.*

5. This relationship between Plaintiff and the 1st MMBNAA continued in relative harmony until Plaintiff began to experience financial hardship and Defendants became vocal about the mismanagement of funds and actions occurring at Plaintiff's campus.

6. As result of the 1st MMBNAA's being a vocal proponent for Plaintiff's alumni, Plaintiff sent the 1st MMBNAA a cease and desist letter dated September 29, 2021. Ex. D (Ex. N to Dkt. 33).

7. Even though the 1st MMBNAA attempted to address the issues raised in the cease and desist letter, See Ex. E (McCray Decl.); Ex. F (Shorter Decl.) Ex. G (Sparks Decl.) and H (Hutcheson Decl.), Plaintiff later filed suit against the Defendants in January 2022.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment results if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure; *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324-25 (1986). A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor. *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995). The evidence and the available inferences must be viewed in the light most favorable to the non-moving party. *Steele c. Shah,* 87 F.3d 1266, 1269 (11th Cir. 1996). The movant bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. If the movant is successful, the non-moving party must come forward with admissible evidence showing a genuine issue of material fact. *Celotex,* 477 U.S. at 324. "A mere scintilla of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990).

### IV. ARGUMENT

As discussed below, Mr. McCray did not possess the requite control to be included on any of the Counts contained in the Amended Complaint, specifically

Counts I, II, III, VI, VIII, IX and XI. For the reasons stated below, each of these Counts against Mr. McCray should fail on summary judgment.

### a. Defendants are entitled to summary judgment on all claims brought by Plaintiff in view of Affirmative Defenses

#### 1) Count I—TRADEMARK INFRINGEMENT- 15 U.S.C. § 1114 (Former & Johnnie)

Plaintiff has allowed the 1st MMBNAA to use its marks going back to as early as 1932. Even though there was a Memorandum of Understanding ("MOU") entered between Plaintiff and the 1st MMBNAA, on March 17, 2006, the MOU is silent regarding trademarks. *See* Ex. B. More specifically, the MOU does not even mention or contain the term "trademark" anywhere in it. Furthermore, MOU expressly states that it is not a legal or binding agreement. *See id*. As such, there is no agreement in place between Plaintiff and the 1st MMBNAA regarding using Plaintiff's trademarks.

As such, not only is there no proof that Plaintiff has ever policed the use of its trademarks, but Plaintiff knowingly stood by as the 1st MMBNAA used Plaintiff's trademarks. In essence though the MOU does not support a naked license to the 1st MMBNAA, it is evident that Plaintiff simply acquiesced to the 1st MMBNAA's usage of Plaintiff's trademarks. Plaintiff's actions, at a minimum, clearly support that its claims are barred by the doctrine of laches, the doctrine of estoppel, waiver, the doctrine of acquiescence, the doctrine of unclean hands, etc.

For example, laches consists of the following elements, (1) a delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there

was undue prejudice to the party against whom the claim is asserted. *Kason Indus., Inc. v. Comp. Hardware Grp., Inc.* 120 F3d 1199, 1203 (11th Cir. 1997). Again, the 1st MMBNAA's use of Plaintiff's marks dating back to 1932. Not until 2006 did the parties entered the non-legally binding MOU regarding their relationship.

Though there is no statute of limitations in the Lanham Act, the laches clock may begin to run as soon as a trademark owner knows or should have known of a potentially infringing use. *See, e.g., Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180 (N.D. Cal. 2015). Plaintiff has known of the 1st MMBNAA's use of its various marks since at least 1932. Plaintiff then entered the MOU in 2006 and again failed to include any direct language regarding the use of its trademarks.

Defendants are clearly prejudiced as it was originally established as the alumni association for Plaintiff since at least 1932. The prejudice continues because even with its changed mission, providing scholarships independent of Plaintiff, Plaintiff is seeking to further limit Defendants from performing this mission, even though such a mission would benefit Plaintiff's own students. For example, Plaintiff is fully aware that through the over ninety (90) years the 1st MMBNAA used Plaintiff's marks this Corporate Defendant has contributed one million dollars into an endowment fund with Plaintiff for student scholarships where this endowment fund has specific rules Plaintiff is supposed to apply to use these scholarship funds. The actions being taken by Plaintiff is prejudicing Corporate Defendants from carrying out its mission.

Similar elements exist when considering waiver and estoppel as the evidence clearly shows that Plaintiff implicitly and explicitly permitted use of its marks.

### 2) Count II—FALSE DESIGNATION OF ORIGIN-15 U.S.C. §1125(a)

As explained above with respect to Count I, the 1st MMBNAA has been around since 1932 and has used Plaintiff's marks continuously since inception. As such at least the doctrines of laches, estoppel and waiver warrant a dismissal of this count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

### 3) Count III—DILUTION BY BLURRING-15 U.S.C. § 1125(c)

Turning back to the response above regarding Count I, the 1st MMBNAA has been around since 1932 and has used Plaintiff's marks continuously since inception. The MOU did not include any language specific to licensing its trademarks to the 1st MMBNAA. Hence, as explained above, at least the doctrines of laches, estoppel and waiver warrant a dismissal of this count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

### 4) Count IV—FLA. STAT. § 495.131- INFRINGEMENT.

As with the other above Counts discussed above, Plaintiff was complicit in the 1st MMBNAA use of Plaintiff's marks as Plaintiff knew of the usage and allowed it to continue until finally raising an issue in 2021. Plaintiff took action to abide by

Plaintiff's cease and desist letter. *See* Ex. E through Ex. H. Plaintiff's actions have prejudiced the 1st MMBNAA. Therefore, as explained above, at least the doctrines of laches, estoppel and waiver warrant a dismissal of this Count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

### 5) Count V—FLA. STAT. § 495.151- DILUTION

Turning back to the response above regarding Count I, the 1st MMBNAA has been around since 1932 and has used Plaintiff's marks continuously since inception. In view of Plaintiff's actions, any claim of dilution is moot. Therefore, as explained above, at least with respect to the doctrines of laches, estoppel and waiver warrant a dismissal of this Count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

### 6) COUNT VI—FLORIDA COMMON LAW TRADEMARK INFRINGEMENT

As stated above, until 2021, Plaintiff took no action to police the use of its trademarks. In addition to not expressly addressing the use of Plaintiff's trademarks, the MOA does clearly state that it is not a legally binding agreement. Therefore, as explained above, at least with respect to the doctrines of laches, estoppel and waiver warrant a dismissal of this Count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

### 7) Count VII—VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT

Turning back to the response above regarding Count I, the 1st MMBNAA has been around since 1932 and has used Plaintiff's marks continuously since inception. Any "unfair and deceptive trade practices" claimed by Plaintiff are directly related to its own actions—namely the relationship between the parties and allowing the 1st MMBNAA to use its marks without a license. Hence, at least with respect to the doctrines of laches, estoppel and waiver warrant a dismissal of this Count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

8) **Count VIII—TRADEMARK INFRINGEMENT- 15 U.S.C. § 1114**

In view of the responses above regarding the aforementioned counts, the 2nd MMBNAA, which was only created as a former treasurer failed to provide the requisite 501(c)(3) documentation to the incoming secretary, and since it works hand-in-hand with the 1st MMBNAA, simply followed suit of the 1st MMBNAA especially considering that it is evident that Plaintiff consciously choose not to police the use of its trademarks. How close they work hand in hand is evident by the IRS allowing the 2nd MMBNAA to have the same fiscal year as the 1st MMBNAA. *See* Ex. G. Therefore, as explained above, at least with respect to the doctrines of laches, estoppel and waiver warrant a dismissal of this Count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

9) **COUNT IX—FALSE DESIGNATION OF ORIGIN-15 U.S.C. § 1125(a)**

The 2nd MMBNAA was only created as a former treasurer failed to provide the requisite 501(c)(3) documentation to the incoming secretary, and since it works hand-in-hand with the 1st MMBNAA. How close they work hand in hand is evident by the IRS allowing the 2nd MMBNAA to have the same fiscal year as the 1st MMBNAA. *See* Ex. G. The 2nd MMBNAA simply followed suit of the 1st MMBNAA especially considering that it is evident that Plaintiff consciously choose not to police the use of its trademarks. Therefore, as explained above, at least with respect to the doctrines of laches, estoppel and waiver warrant a dismissal of this Count as all defendants have been prejudiced by Plaintiff's belated attempts to police its marks.

**10) Count X—VIOLATION OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT**

In view of the remarks above regarding the other causes of action, it is evident that any perceived unfair and deceptive trade practice violations were the sole and direct result of Plaintiff failing to properly police its marks. The 2nd MMBNAA was only created as a former treasurer failed to provide the requisite 501(c)(3) documentation to the incoming secretary, and since it works together with the 1st MMBNAA. How closely they both work hand in hand is evident by the IRS allowing the 2nd MMBNAA have the same fiscal year as the 1st MMBNAA. *See* Ex. G. The 2nd MMBNAA simply followed suit of the 1st MMBNAA especially

considering that it is evident that Plaintiff consciously choose not to police the use of its trademarks.

### 11)  Count XI—Civil Conspiracy

The elements of a civil conspiracy claim are: "(a) a conspiracy between two or more parties, (b) to do an unlawful act, or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. *See, e.g., Drenberg v. Focus!...On Surety, LLC.*, 2013 U.S. Dist. LEXIS 178834 (Middle District of Florida December 20, 2013).  In the instant case, there was no conspiracy as there in essence is only one party (see argument below regarding Mr. McCray and see also *Mancinelli v. Davis*, 2017 WL 1278074, *2 (Fla. 4th DCA 2017) (finding that a company cannot conspire with its officers, employees and agents if none have a personal stake in the underlying activities that is separate from the company's interests)) and there was a legitimate business purpose. The 2nd MMBNAA was only created as a former treasurer failed to provide the requisite 501(c)(3) documentation to the incoming secretary, and since it works together with the 1st MMBNAA. Both entities have the same officers, and boards. The 1st MMBNAA is essentially dormant as it no longer has its not-for-profit status with the IRS.

### b. Defendant McCray is entitled to summary judgement as he does not possess the request control to be a named Defendant

It is well-settled in the Eleventh Circuit that a trademark may be infringed by an individual as well as a corporation and all participants, including those acting merely as officers of a corporation, where all participants may be jointly and severally liable. *Chanel, Inc. v. Italian Activewear of Florida, Inc., 931 F. 2d 1472, 1477* (11th Cir. 1991) ("Natural persons, as well as corporations, may be liable for trademark infringement under the Lanham Act…. If an individual actively and knowingly caused the infringement, he is personally liable*."); Babbit Electronics, Inc. v. Dynascan Corp*., 38 F. 3d 1161, 118 (11th Cir. 1994)("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."); *Luxottica Group, S.P.A. v. Airport Mini Mall, LLC,* 932 F. 3d 1303, 1317, n. 8 (11th Cir. 2019) (Personal contributory liability was found of owner and manager of shopping center where tenants sold counterfeit goods. They were the "'moving, active, conscious forces' behind their subtenant's infringement."); *Edmondson v. Velvet Lifestyles, LLC*, 43 F. 4th 1153, 1164 (11th Cir. 2022) (President and manager of co-defendant corporation was not personally liable for summary judgment finding false endorsement. "It is not sufficient to show that the individual 'participated or engaged in some infringing act;' the individual must have 'actively participated as a moving force in the decision to engage in the infringing acts, or otherwise caused the infringement as a whole to

occur.'"); *Museum of Selfies, Inc. v. Miami Selfie, LLC.*, 2022 WL 2390718, *4-5 (S.D. Fla. 2022) (Dismissed claims against individual defendants. "Plaintiff provides no factual allegation that the individual Defendants actively and knowingly participated in the infringing activities, as opposed to other members or employees of the corporate Defendants.").

Hence, to be personally liable, Mr. McCray must have done more than merely controlled corporate affairs, he must have personally taken part in infringing activities or specifically directed employees to do so. *Edmondson v. Velvet Lifestyles, LLC*, 43 F. 4th 1153, 1161 (11th Cir.) (Quoting treatise. President and manager of co-defendant corporation was not personally liable for summary judgment finding false endorsement.). Even though alleged by Plaintiff, such actions clearly have not occurred here. Instead, to the contrary, Mr. McCray actually has taken actions specifically to direct the MMBNNA and its various local chapters not to commit any infringing acts.

Specifically, Corporate Defendants operate pursuant to its By-Laws. *See* Ex. E, para. 8-10; Ex. F, para. 5-6; Ex. G, para. 8-11; and Ex. H, para. 9. All actions taken by Mr. McCray were in accordance with the By-Laws as the general actions were first approved by the MMBNAA. *See, e.g.,* Ex. E through Ex. H.

Mr. McCray did not actively and knowingly cause the alleged infringement as alleged actions were in support of approved positions taken by either the

Executive Committee or the Board of Directors. *See., e.g.,* Ex. E through Ex. H. Nor did he actively participate as a moving force in the decision of the MMBNAA with respect to the causes of action at issue as each and every member of the Executive Committee or the Board of Directors possess an equal vote to Mr. McCray. *See, e.g.,* Ex. E through Ex. H.

Furthermore, it is evident, that as President, Mr. McCray led efforts to make sure the issues raised by Plaintiff in the cease and desist letter were properly addressed. *See generally,* Ex. E through Ex. H.

Therefore, there is no legal basis for Mr. McCray to be personally named as defendant in this action.

### c. Defendants are entitled to their attorneys' fees and costs pursuant to 15 U.S.C. §1117(a).

Defendants are entitled to each of their respective attorneys' fees incurred in relation to the instant action pursuant to 15 U.S.C. §1117(a). In an exceptional trademark infringement case brought under the Lanham Act, a court may award reasonable attorney's fees to the prevailing party. 15 U.S.C. §1117(a). A "prevailing party" includes a prevailing defendant. *See Welding Servs. V. Forman,* 301 Fed. Appx. 862 (11th Cir. 2008) (citing *Lipscher v. LRP Publ'ns, Inc.,* 266 F.3d 1305, 1319 (11th Cir. 2001) The conduct that the court must assess in order to determine whether a case is exceptional depends on which party prevails. *See Welding Servs.,* 301 Fed. App. At 862

(citing *Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc.,* 223 F.3d 1143, 1148 (10th Cir. 2000). The Tenth Circuit explained:

> When attorney fees are awarded against a defendant, the court looks to whether the defendant's acts of infringement were pursued in bad faith. When attorney fees are awarded against a plaintiff, the court looks to the plaintiff's conduct in bringing the lawsuit and the **manner in which it is prosecuted**. (emphasis added)

*Id.* An exceptional case is one that can be characterized as malicious, fraudulent, deliberate or willful, or one in which evidence of bad faith or fraud exists. *Welding Servs.,* 301 Fed. Appx. At 862 (citing *Tire Kingdom, Inc. v. Morgan tire & Auto, Inc.,* 253 F.3d 1332, 1335 (11th Cir. 2001). Applying this standard, the Eleventh Circuit has held that an award of attorney's fees to a prevailing defendant may be justified when a plaintiff has brought an obviously weak Lanham Act claim and the evidence shows that the plaintiff has acted in bad faith and with improper motive. *Id.* at 1336. (emphasis added).

In the instant case, attorneys' fees are clearly warranted. Plaintiff's Lanham Act claim is extremely weak based on the fact AFFIRMATIVE DEFENSES… Specific to Defendant McCray, as explained above, there was no basis to name him individually and even when Plaintiff should have realized this error, and instead of dropping Mr. McCray as a party, Plaintiff pressed forward without disregard to the improprieties of its actions. Pursuant to 15 U.S.C. §1072, Plaintiff's conscious and deliberate actions warrant the award of attorneys' fees and costs to Defendants as the prevailing party.

    d.    **Defendants reserve their right to recover each of their respective attorneys' fees as the prevailing parties of this suit pursuant to Fla. Stat. 495.141.**

Under the Florida trademark statute, courts have the discretion to grant reasonable attorney's fees to the prevailing party according to the circumstances of the case. *See* Fla Stat. § 495.141 (stating that the court may also award reasonable attorney's fees to the prevailing party according to the circumstances of the case). Defendants reserve their right to individually seek recovery of their fees under the statute currently, with the intent to move for fees at a later junction.

    e.    **Defendants reserve their right to recover each of their respective attorneys' fees as the prevailing parties of this suit pursuant to Fla. Stat. 501.2105.**

Under FDUTPA, courts have the discretion to grant fees and costs to a prevailing party. *See* Fla Stat. § 501.2105(1) (stating that a prevailing party "may receive [its] reasonable attorney's fees and costs from the non-prevailing party"); Fla. Stat. § 501.2105(3) ("The trial judge may award the prevailing party the sum of reasonable costs incurred in the action plus a reasonable legal fee for the hours actually spent on the case as sworn to in an affidavit."). Defendants reserve their right to individually seek recovery of their fees under the statute currently, with the intent to move for fees at a later junction.

**V.    ORAL ARGUMENTS**

Though Defendants submit the case law is clear about Plaintiff's failure to belated police and enforce its trademarks, Defendants concur in Plaintiff's request for oral arguments.

VI.     **CONCLUSION**

Based on the foregoing, Defendants submit that in view of Plaintiff's actions and inactions, this matter, in its present configuration with the inclusion of all ___ counts, should never have been brought before this Court.  Defendants respectfully request that this Honorable Court GRANT Defendant's Motion for Summary Judgment against all counts or at least those the Court agrees were improperly brought, reimburse Defendants for their attorneys' fees and costs in defending this matter, and provide such other and further relief as this Court deems just and necessary.

Dated this 8th day of January 2024.

                        Respectfully submitted,

                        BEUSSE SANKS, PLLC
                        157 E. New England Avenue, Suite 375
                        Winter Park, FL 32789
                        Telephone: (407) 644-8888
                        Email: tsanks@firstiniplaw.com
                        ***Attorney for Defendants, Dr. Mary Mcleod Bethune National Alumni Association, Inc., Mary Mcleod Bethune National Alumni Association, Inc., and Johnny L. McCray, Jr.***

                    By: */s/ Terry M. Sanks*
                        Terry M. Sanks

Florida Bar No. 0154430

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 8th, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

*/s/ Terry M. Sanks*
Terry M. Sanks